**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 899, et al., Plaintiffs,**

v.

**PHOENIX ASSOCIATES, INC., a West Virginia Corporation, et al., Defendants.**

Civ. A. No. 6:92–1011.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Jan. 14, 1994.

Stanley M. Hostler and Carl E. Hostler, Charleston, WV, for plaintiffs.

Fred Holroyd, Holroyd & Yost, Charleston, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is plaintiff's motion to certify class, filed in accordance with *Rule* 23, Fed. R.Civ.P. Plaintiff wishes to add as parties plaintiff to this action a class consisting of:

> Any employee in the construction industry in the Parkersburg–Marietta areas who, during the years 1985 to the present, worked under a collective bargaining agreement involving any of the [plaintiff unions].

For the following reasons, the motion is **GRANTED.**

## I.

Plaintiffs brought this action alleging defendants violated the terms of various collective bargaining agreements. The facts as averred by plaintiffs are, in brief summary, as follows:

Defendant Carl E. Stephens Construction Co. ("Stephens"), a general contractor which operated in Parkersburg, West Virginia, was a party to numerous collective bargaining agreements requiring, *inter alia,* that Stephens employ only union labor and contribute to union pension and health insurance programs.

In 1985, three close relatives [1] of the two Stephens owners incorporated Phoenix Associates, Inc. ("Phoenix"), a non-union company engaged in a similar business also in the Parkersburg area. The Stephens owners fostered Phoenix's development, making several unguaranteed loans to the fledgling company, allowing Phoenix to operate out of Stephens facilities, and permitting the use of Stephens personnel to perform clerical work for Phoenix.

Although the two companies performed similar work for many common customers, Phoenix flourished and Stephens foundered. In late 1992, Stephens ceased business. Phoenix continues to operate as a profitable, non-union company. One of the Stephens owners' sons, a former Stephens employee, is president of Phoenix; the other Stephens owner now works for Phoenix.

■ Based on these and other like factors, Plaintiffs argue Phoenix is an alter-ego of Stephens, formed solely to escape from Stephens' obligations under the collective bargaining agreements. Plaintiffs allege the Stephens owners sought to evade their responsibilities under the union agreements by creating Phoenix as a non-union company, while allowing Stephens to expire slowly. "Double-breasting," as this practice is known, violates the National Labor Relations Act when proven. *Alkire v. NLRB,* 716 F.2d 1014, 1018 (4th Cir.1983).

---

1. Stephens is owned by Jack Stephens and John Coffman. When Phoenix was incorporated, its board of directors consisted of Scott Stephens, Jack's son; Betty Stephens, Jack's wife; and Anne Coffman, John's wife.

## II.

The procedure a court must follow to certify a class is embodied in *Rule* 23, Fed. R.Civ.P. *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 727 (4th Cir.1989), *cert. denied sub nom. Anderson v. Aetna Casualty & Surety Co.*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). Under *Rule* 23, certification of a class action requires that the action meet the requisites of a two-step test. *Id.* As a first step, the action must satisfy all four of the requirements established by subsection (a) of the Rule. *Rule* 23(a) requires: (1) the class must be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Rule* 23(a), Fed. R.Civ.P.

■ If the proposed class meets these criteria, the next step demands that the action fit within at least one of the three categories of actions identified in subsection (b) of the Rule. An action may qualify under *Rule* 23(b)(1), the first of such categories, "if individual adjudication of the controversy would prejudice either the party opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B)." *Robins*, 880 F.2d at 728 (quoting *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir.1986) and *Intern. Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d 1259, 1269 (4th Cir.1981)). Subsection (b)(2) covers suits for injunctive or declaratory relief. *Robins*, 880 F.2d at 728. The final category, (b)(3), applies where there are common issues of law or fact and the class action device has superiority over any other available procedure for disposing fairly and efficiently of the controversy. *Id.*

■ Two other implicit prerequisites not specified in *Rule* 23 require that there be an identifiable class and that plaintiff or plaintiffs be a member of that class.[2] *Id.* (citing 7A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1760 (1986) ("Wright and Miller") and *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir.1976)). *See also Christman v. Am. Cyanamid Co.*, 92 F.R.D. 441, 446 (N.D.W.Va.1981).

■ In considering a motion for class certification, the Court must determine only whether the requirements of *Rule* 23 have been satisfied and may not consider the merits of plaintiffs' claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974). The trend is to give *Rule* 23 a liberal construction. *Robins*, 880 F.2d at 729; *Kidwell v. Transp. Communications Int'l Union*, 946 F.2d 283, 305 (4th Cir.1991). The party seeking class certification has the burden of establishing the proposed class meets the requirements of *Rule* 23. *Paxman v. Campbell*, 612 F.2d 848, 855 (4th Cir.1980), *cert. denied*, 449 U.S. 1129, 101 S.Ct. 951, 67 L.Ed.2d 117 (1981); *Poindexter v. Teubert*, 462 F.2d 1096, 1097 (4th Cir.1972). The Court has broad discretion in determining whether a particular action complies with *Rule* 23. *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 185 (4th Cir.1993); *Roman*, 550 F.2d at 1348.

## III.

■ The assessment required for class certification is the responsibility of the District Court, which is to make its decision after "a rigorous analysis" of the particular facts of the case. *Robins*, 880 F.2d at 728. The Court will address each certification requirement individually.[3]

### A. Numerosity

■ The first requirement of *Rule* 23(a) is that "the class is so numerous that joinder of all members is impracticable." *Rule* 23(a), Fed.R.Civ.P. No specified num-

---

**2.** The Court concludes the proposed class meets these two implicit requirements.

**3.** Defendants do not assert plaintiffs have failed to meet the requirements for class certification. Rather, defendants argue plaintiffs' motion to certify is untimely, and will be unduly disruptive at this stage of the litigation. Although the Court agrees plaintiffs should have filed their motion to certify seasonably, the motion's tardiness does not supply sufficient ground for the Court to refuse to certify the class. The Court notes as well plaintiffs stated in their complaint they intended to seek certification of the class.

ber is needed to satisfy this requirement. *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir.1984); Wright and Miller § 1762. Rather, each case turns on its own particular facts. *Brady,* 726 F.2d at 145. Joinder of all members of the class need only be impracticable, not impossible. *Christman,* 92 F.R.D. at 451. Impracticality of joinder is not determined by a numerical test alone. *Ballard v. Blue Shield of S.W. Va., Inc.,* 543 F.2d 1075, 1080 (4th Cir.1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977). Factors relevant to the evaluation of numerosity include the estimated size of the class, the geographic diversity of the class, the difficulty of identifying class members, and the negative impact on judicial economy if individual suits were required. *Christman,* 92 F.R.D. at 451.

■ Plaintiffs estimate there are approximately 1,000 members in the proposed class. The Court of Appeals has concluded much smaller classes than this one were within the proper range for certification. *Brady,* 726 F.2d at 145 (74 members); *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n,* 375 F.2d 648, 653 (4th Cir.1967) (18 members). Although the parties have not yet evaluated the geographic diversity of the proposed class, it is likely class members are widely scattered. The class, as plaintiffs define it, includes anyone who worked under particular collective bargaining agreements in the construction industry in the Parkersburg–Marietta area from 1985 to the present. As defendants note, the proposed class includes more than 1,000 persons "who live or may have lived in the Parkersburg–Marietta area over eight years ago." While the parties disagree about the difficulty inherent in identifying members of the proposed class, concerns of judicial economy weigh heavily in favor of sufficient numerosity. There is no doubt individual suits would significantly strain judicial resources. *Christman,* 92 F.R.D. at 451.

Defendants do not dispute that the proposed class is sufficiently numerous. The Court is inclined to agree. Accordingly, the Court holds that the putative class is sufficiently numerous to make the joinder of all class members impracticable.

### B. *Commonality*

■ The second requirement under *Rule* 23(a) is that "there are questions of law or fact common to the class." *Rule* 23(a)(2), Fed.R.Civ.P. Plaintiffs allege this action raises common questions of law and fact because "all members of the class were prejudiced by the illegal existence of Phoenix Associates, Inc." Defendants do not dispute that common questions of law or fact exist.

Plaintiffs complain members of the proposed class were damaged by Defendants' alleged breach of collective bargaining agreements. Each of the proposed class plaintiffs was covered by one of the collective bargaining agreements at issue; a breach of those agreements as alleged by the plaintiffs necessarily would have caused damage to the class plaintiffs, most notably by affecting their ability to obtain the work to which they were entitled under the terms of the agreements.

■ The Court is satisfied the common factual questions relating to defendants' alleged breach of the collective bargaining agreements meet the requirements of *Rule* 23(a)(2). The fact that the individual class plaintiffs may have suffered differently from the alleged breach is immaterial for purposes of this prerequisite. *Christman,* 92 F.R.D. at 451; Wright & Miller, § 1763. Although the actual effects of the alleged breach might vary throughout the class, the possible deprivation of employment opportunity occasioned by the breach is a question of fact common to all members of the proposed class.

### C. *Typicality*

■ The third requirement under *Rule* 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Rule* 23(a)(3). The Rule only requires that the representatives' claims be typical of the other class members' claims, not that the claims be identical. *Christman,* 92 F.R.D. at 451. When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment. *Id.* at 452 n. 28.

■ Plaintiffs have selected Daryl L. Nonamaker to serve as class representative. According to plaintiffs, Mr. Nonamaker has been a member of Plaintiff Carpenters Local 899 employed in the construction industry in the Ohio Valley area for decades. Plaintiffs assert Mr. Nonamaker's claims are identical to those of the other class members. Defendants do not dispute this assertion.

The Court holds Mr. Nonamaker's claims are typical of the claims of the other members of the proposed class. Mr. Nonamaker's claims arise from the same course of conduct as the claims of the other class members and are based on defendants' alleged breach of the collective bargaining agreements. These common elements of fact and law satisfy the typicality requirement of *Rule* 23(a).

### D. *Adequacy of Representation*

■ The fourth requirement of *Rule* 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." *Rule* 23(a)(4), Fed.R.Civ.P. When assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves. *Christman,* 92 F.R.D. at 452.

■ Defendants do not question the experience or competence of plaintiffs' counsel to represent the interests of the class. The Court finds that plaintiffs' counsel has prosecuted this action vigorously up to now, and that counsel has the capacity to represent adequately the interests of the class. Moreover, the representative party's interests appear to be identical to the interests of the proposed class. Defendants have not suggested those interests conflict. The Court therefore concludes the requirement of adequacy of representation is satisfied.

### E. *Requirements of Rule 23(b), Fed.R.Civ.P.*

■ Having satisfied the four requirements of *Rule* 23(a), the plaintiffs must establish that at least one of the three provisions of *Rule* 23(b) have also been satisfied.[4] The Court concludes this action is maintainable under *Rule* 23(b)(1)(A), which allows an action to be maintained as a class action if the prosecution of separate actions by individual members of the class would create a risk of "inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class".[5]

Defendants' establishment and operation of Phoenix either violated the Stephens collective bargaining agreements, or it did not, with respect to all members of the proposed class. A judgment finding no "double-breasting" in one case could be trumped by a contrary judgment that the collective bargaining agreements were violated. Potentially, this would impose upon the Defendants incompatible standards of conduct. There is thus no room for doubt this action qualifies under *Rule* 23(b)(1)(A).

### IV.

Plaintiffs have satisfied the requirements of *Rule* 23, Fed.R.Civ.P., for certification of the proposed class. The Court **ORDERS** the class plaintiffs are certified to represent shall be defined as:

Any employee in the construction industry in the Parkersburg–Marietta areas who, during the years 1985 to the present, worked under a collective bargaining agreement involving any of the following local unions: United Brotherhood of Carpenters and Joiners of America, Local 899; United Brotherhood of Carpenters and Joiners of America, Local 356; Local 175 of the International Brotherhood of Teamsters; Local 787 of the International Association of Bridge, Structural, and Orna-

---

4. Although plaintiffs apparently contend this action meets the requirements of *Rule* 23(b)(2), they have not requested injunctive or declaratory relief in favor of the class. *See Christman,* 92 F.R.D. at 453.

5. Having concluded this action is maintainable as a class action under *Rule* 23(b)(1)(A), the Court need not determine whether other subdivisions of *Rule* 23(b) apply as well.

mental Iron Workers; Millwright Local 1755 of the United Brotherhood of Carpenters and Joiners of America; Millwright Local 207 of the United Brotherhood of Carpenters and Joiners of America; Local 15 of the International Brotherhood of Bricklayers; Local 6 of the International Brotherhood of Bricklayers; Local 1144 of the International Brotherhood of Painters and Allied Trades; Local 93 of the International Brotherhood of Painters and Allied Trades; Laborers' Local 1085; Laborers' Local 639; Operating Engineers' Local 132; Cement Masons' Local 536; Cement Masons' Local 181.