**Harry K. BLACK, et al., Plaintiffs,**

v.

**RHONE-POULENC, INC., Defendant.**

Civil Action No. 2:96–0163.

United States District Court,
S.D. West Virginia,
Charleston Division.

Dec. 19, 1996.

Richard Neely, Neely & Hunter, Charleston, WV, Henry Dart, Metairie, LA, Jack W. Harang, Law Offices of Jack W. Harang, Metairie, LA, for plaintiffs, Carlton McClenathan, Harry K. Black, Sr., Loren D. Bowles, Warren L. Ferguson, Gerri Osburn, Reta M. Brothers, Brian K. Broussard, Brittani Broussard, Jordan Broussard, Estelle Chandler, Edna Contreras, Dennis Douglas, Billy K. Evans, Ronnie D. Harris, Wanda R. Osborne, Pavanne L. Pettigrew, Vera J. Powell, William Rider, Tracy R. Robison, Trae Robinson, Janee Robinson and Ametrea Robinson.

J. Rudy Martin, Lynn Oliver Frye, James Eric Whytsell, A. L. Emch, Jackson & Kelly,

Charleston, WV, for defendant, Rhone–Poulenc, Inc.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Plaintiffs' motion for class certification. The Court conditionally **GRANTS** the motion.[1]

## I. FACTUAL BACKGROUND

Defendant is a New York corporation doing business in Kanawha County, West Virginia. Plaintiffs are putative class representatives of persons seeking redress for events that occurred on February 15, 1996. A fire broke out at Rhone–Poulenc's Institute, West Virginia plant on that date (hereinafter the "Fire"). During the Fire, a cloud of toxic substances containing toluene and MIC was released into the atmosphere.

Pre-established emergency response procedures were implemented by Defendant and public officials. As a result, the public was ordered to shelter-in-place and certain thoroughfares were closed temporarily. Some individuals suffered physical injuries from exposure to the chemicals. Most suffered only inconvenience and emotional distress.

Plaintiffs filed this action on February 26, 1996. The Amended Complaint contains four counts alleging claims for (1) strict liability pursuant to *Restatement (Second) of Torts* § 519 (1977); (2) general strict liability or, in the alternative, negligence; (3) intentional infliction of emotional distress; and (4) negligent infliction of emotional distress.[2] The complaint seeks compensatory and punitive damages as well as equitable relief requiring Defendant's submission to regular independent safety audits.

Plaintiffs have moved now for class certification. This relief is vigorously opposed by Defendant. According to Plaintiffs, the proposed class should consist of "all persons or other entities, who or which sustained damage as a result of the leak of toxic gas from the Institute, West Virginia facility of [Defendant] on February 15, 1996." Pls.' certific. mot. at 1.[3]

## II. DISCUSSION

### A. General Principles:

Our Court of Appeals stated in *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir.1976) that "[t]o maintain a class action, one must satisfy all four of the provisions of [Rule 23] section (a) and one of the subdivisions of section (b)." *See United Bhd. of Carpenters & Joiners of Am., Local 899 v. Phoenix Assocs., Inc.*, 152 F.R.D. 518, 521 (S.D.W.Va.1994) (Haden, C.J.). *Rule* 23(a) provides as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defens-

---

1. Plaintiffs also seek certification of certain subclasses. The Court concludes the suggested division is premature. The better course is to withhold a decision on subclass certification pending responses, if any, to the notice mandated by *Rule* 23(c)(2).

2. Although previously discussed in the Court's Memorandum Opinion disposing of Defendant's motion to dismiss, Plaintiffs again raise the issue of recovering damages for pure annoyance, aggravation and inconvenience. First, Plaintiffs assert they are entitled to recover for these damage elements based on the law of nuisance. The Court need not reach that issue. Even under the most liberal of pleading standards, Plaintiffs have not alleged a nuisance claim. *See McClenathan v. Rhone–Poulenc*, 926 F.Supp. 1272, 1274 (S.D.W.Va.1996) (stating " 'there is no duty on the part of a court to create a claim which the plaintiff has not spelled out in his complaint.' ") (quoted authority omitted).

   Second, Plaintiffs have failed to heed the Court's invitation to proffer case law supporting recovery of the challenged damage elements under *Restatement (Second) of Torts* § 519 absent a personal injury or property damage. Accordingly, the Court's ruling on the recoverability of damages for pure annoyance, aggravation and inconvenience in the May 30 Memorandum Opinion continues in full force: The recoverability of the challenged damage elements will depend on the presence of severe emotional distress in the context of the tort of outrage or any other cognizable personal injury, such as property damage or physical harm to the person.

3. As noted in *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir.1976), the definition of the class is a critical question and one reserved ultimately for the Court. *Id.* at 1348 (stating "In order to determine whether a class action is proper, the district court must determine whether a class exists and if so what it includes. Although not specifically mentioned in the rule, the definition of the class is an essential prerequisite to maintaining a class action.").

es of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.; see Simmons v. Poe,* 47 F.3d 1370, 1380 (4th Cir.1995); *Boley v. Brown,* 10 F.3d 218, 223 (4th Cir.1993). *Rule* 23(b) provides:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

.    .    .    .    .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.; see also Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 184 (4th Cir.1993) (discussing the four factors).

■    The Court may also certify an action to be maintained as a class action with respect to particular issues. Fed.R.Civ.P. 23(c)(4); *Central Wesleyan,* 6 F.3d at 185 (stating "This court also has admonished district courts to 'take full advantage of the provision in [Rule 23(c)(4) ] permitting class treatment of separate issues' in order 'to promote the use of the class device and to reduce the range of disputed issues' in complex litigation.").

■    The party seeking certification under *Rule* 23 bears the burden of demonstrating the requirements of the *Rule. See, e.g., International Woodworkers of Am. v. Chesapeake Bay Plywood Corp.,* 659 F.2d 1259, 1267 (4th Cir.1981) [4]; *Windham v. American Brands Inc.,* 565 F.2d 59, 65 (4th Cir.1977), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978) (stating "It is well settled in this jurisdiction that the proponent of class certification has the burden of establishing the right to such certification under Rule 23."); *Doctor v. Seaboard Coast Line R.R. Co.,* 540 F.2d 699, 707 (4th Cir.1976); *Phoenix,* 152 F.R.D. at 521.

With or without resort to a hearing, the Court is called upon to make a detailed fact-based inquiry into the propriety of certification. *See, e.g., Chesapeake,* 659 F.2d at 1267–68 (stating "We have often emphasized the value of specific findings on the factors enumerated in Rule 23[.]"); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1312–13 (4th Cir.1978); *Doctor,* 540 F.2d at 708. This Court recognized in *Phoenix,* "[t]he assessment required for class certification is the responsibility of the District Court, which is to make its decision after la rigorous analysis' of the particular facts of the case." *Id.* at 521 (quoting in part *In re A.H. Robins Co. Inc.,* 880 F.2d 709, 728 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989)).

The recent trend in class certification decisions is to interpret Rule 23 flexibly and give it a liberal construction. *Kidwell v. Transp. Communications Int'l Union,* 946 F.2d 283, 305 (4th Cir.1991), *cert. denied,* 503 U.S. 1005, 112 S.Ct. 1760, 118 L.Ed.2d 423 (1992); *A.H. Robins,* 880 F.2d at 740; *Phoenix,* 152 F.R.D. at 521.

■    A district court enjoys broad discretion in making a certification decision:

This Court, in reviewing the class certification decisions of district courts under Rule 23, has generally accorded great def-

---

4.    *Chesapeake* disposes of Plaintiffs' suggestion a hearing is required prior to denying a motion for class certification. *Id.* at 1268 (stating "It is not essential to the resolution of every class certification motion that the trial court conduct a hearing[.]"). *But see Doctor v. Seaboard Coast Line*

R.R. Co., 540 F.2d 699, 708 (4th Cir.1976) (stating " 'It should take more than *ipse dixit* to make a class.' ") (quoted authority omitted). *Doctor,* and cases like it, obviously encourages hearings as a mechanism to screen out meritless claims.

erence to the district court's determinations....

.    .    .    .    .

[E]ven if reasonable persons can disagree as to whether the class certification decision was proper, the District Court's decision certainly does not amount to an abuse of discretion.

*Simmons,* 47 F.3d at 1380, 1382; *Boley,* 10 F.3d at 223; *Central Wesleyan,* 6 F.3d at 185; *A.H. Robins,* 880 F.2d at 728–29; *In re Catawba Indian Tribe,* 973 F.2d 1133, 1136 (4th Cir.1992), *cert. denied,* 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993).

As noted by our Court of Appeals, "Certification is only concerned with[, *inter alia,]* the commonality (not the apparent merit) of the claims and the existence of a sufficiently numerous group of persons who may assert those claims." *Lilly v. Harris–Teeter Supermarket,* 720 F.2d 326, 332–33 (4th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984); *see also Doctor,* 540 F.2d at 707 (stating a district court should not " 'conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.' ") (quoted authority omitted); *Phoenix,* 152 F.R.D. at 521.

Our Court of Appeals also has "embraced the view that 'the mass tort action for damages may ... be appropriate for class action, either partially o[r] in whole.' " *Central Wesleyan,* 6 F.3d at 185, 186 (noting also that certification can be a "valuable tool in addressing mass tort litigation.") (quoting *A.H. Robins,* 880 F.2d at 740).

### B. Analysis of the Rule 23(a) Requirements:

#### 1. Numerosity

■ In *Brady v. Thurston Motor Lines,* 726 F.2d 136, 145 (4th Cir.), *cert. denied,* 469 U.S. 827, 105 S.Ct. 110, 83 L.Ed.2d 53 (1984), the court noted the *Rule* 23(a)(1) requirement that the class be " 'so numerous that

joinder of all members is impracticable.' " *Id.* (quoted authority omitted). The court further stated " 'No specified number is needed to maintain a class action.' " *Id.* (quoted authority omitted). In analyzing sheer numbers, the same court elaborated further:

[W]e are unwilling as a matter of law to hold that a class of 74 persons does not meet the requirement of numerosity. Previous cases, though uneven at best, suggest that a class as large as 74 persons is well within the range appropriate for class certification. Indeed, this court has held that a much smaller class [of 18] can meet the numerosity requirement.

*Id.* at 145. *But see Roman v. ESB, Inc.,* 550 F.2d 1343, 1348–49 (4th Cir.1976) (suggesting that 53 persons would not meet the numerosity requirement in a racial discrimination case).

As stated in *Phoenix,* "[f]actors relevant to the evaluation of numerosity include the estimated size of the class, the geographic diversity of the class, the difficulty of identifying class members, and the negative impact on judicial economy if individual suits were required." *Id.* at 522.

Plaintiffs have offered evidence of numerosity. For instance, concerning the estimated size of the class, Plaintiff Ronnie Harris, an employee of an educational institution close to the Institute Plant, stated approximately 2,000 people were affected by the Fire. Dep. of Ronnie Dewayne Harris at 50–51. Plaintiff Warne Ferguson stated 2,500 people in his neighborhood in the Institute area were affected by the Fire and leak and that persons rerouted or stopped in traffic numbered in the "hundreds[.]" Dep. of Warne Leon Ferguson at 103–04. Captain Duane Drennen of the Kanawha County Sheriff's Department estimated there were in excess of 5,000 motorists in traffic on the roads in the vicinity of the Institute Plant affected by the Fire. While cognizant of Defendant's arguments to the contrary,[5] the

---

5. Defendant has raised also serious and substantial questions concerning the merits of Plaintiffs' claims, especially in regard to the plausibility of the injuries allegedly suffered and the expert testimony in support. Defendant asserts that

being "affected" by the Fire is distinct from sustaining legally cognizable injuries from the Fire. The Court agrees. The Court is willing at this early juncture, however, to give Plaintiffs and potential class members some leeway to

Court is provisionally willing to accept Plaintiffs' numerical estimates of the potential class.

Based on this, and analysis of the remaining subfactors, the Court finds Plaintiffs have established conditionally the numerosity of the class and the impracticability of joinder.

### 2. Commonality

■ This factor is stated in the disjunctive. *See Holsey v. Armour & Company,* 743 F.2d 199, 217 (4th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985) (stating "Despite the presence of individual factual questions, the commonality criterion of rule 23(a) is satisfied by the common questions of law presented.") Nonetheless, the Court of Appeals has suggested that "[c]lass certification is only proper when a determinative critical issue overshadows all other issues." *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990).

Defendant has not mounted a serious challenge to Plaintiffs' arguments on this factor. There are clearly common, significant issues present, including the substantial questions of (1) whether Defendant was blameless or, in the alternative, acted intentionally, recklessly or negligently in allowing the leak and Fire to occur; (2) what substances were leaked and their general behavior and effects; (3) whether Defendant engaged in outrageous conduct for purposes of intentional infliction of emotional distress; (4) whether Defendant's alleged actions were willful, wanton and reckless for purposes of punitive damages; (5) whether Defendant's alleged conduct warrants global injunctive relief;

and (6) whether Defendant might have some claim of immunity because of governmental requirements to respond to chemical emergencies in certain prescribed ways. Defendant's alleged fault alone is a determinative and critical issue. Plaintiffs have satisfied the commonality factor.

### 3. Typicality

■ This factor and the commonality factor often merge. *See* 1 Herbert B. Newberg, *Newberg on Class Actions* § 3.13 (3d ed.1992). As noted by the Supreme Court, the two considerations "serve as guideposts for determining whether ... the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected[.]" *General Tele. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982).

This Court previously addressed the typicality factor in *Phoenix:* "The Rule only requires that the representatives' claims be typical of the other class members' claims, not that the claims be identical. *When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment." Id.* at 522 (citations omitted) (emphasis added).

It cannot be argued strongly that the claims of the representatives and the claims of the potential class members will not "arise[ ] out of the same legal or remedial theory." *Phoenix,* 152 F.R.D. at 522. The Plaintiffs assert "the named plaintiffs and

identify further victims and determine whether they suffered compensable physical injuries, property damage or emotional distress. While Defendant's arguments ultimately may eviscerate Plaintiffs' case, circuit and district precedent recognize the impropriety of becoming entangled in the merits at the class certification stage. While some limited overlap in analysis between the merits of the suit and the requirements of *Rule* 23 is bound to occur, the Court declines Defendant's implicit invitation to convert the class certification motion into a summary judgment motion. Defendant may be assured, however, that on motion at the conclusion of the merits phase of discovery, the Court will conduct a hearing on Plaintiffs' expert testimony and exercise its "gatekeeping" function pursuant to *Dau-*

*bert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Defendant also maintains that, given Plaintiffs' counsels' prior running of advertisements and posting of notices to join the action, there will not be a substantial increase in the numbers of class members even when the Court directs notice to be given pursuant to Rule 23(c)(2). Defendant may be correct. Should that occur, the Court promptly will entertain a motion to decertify the class. Nonetheless, given the liberal interpretation accorded Rule 23 in this circuit, the Court believes the better course is to hold conditionally that Plaintiffs have made an adequate showing on this factor.

each class member rely on the same theory of recovery or relief based on the same alleged course of conduct by the defendant." Pls.' mem. in supp. at 13.

Further, Plaintiffs' toxicologist and psychologist testified they would expect to find similar physical symptoms and psychological effects in the population as a whole, as were found in the representative Plaintiffs studied.[6] Defendant rightly argues the varying factual circumstances of occupational and health history, as well as age, all could influence exposure effects or trauma experienced. As noted in *Phoenix* and circuit precedent, however, this argument is insufficient to defeat certification. *See also* 1 Herbert B. Newberg, *supra* (stating "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.") Defendant relies only on non-binding, non-circuit district court precedent to the contrary.

The Court is satisfied at this stage that "the interests of the representative are aligned with the common questions affecting the class." 1 Herbert B. Newberg, *supra* (stating also that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.") The Court thus finds Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy

■ The Court is guided here by the notion that "[w]hen assessing the class representatives' ability to adequately represent the interests of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and

the class representatives themselves." *Phoenix*, 152 F.R.D. at 523 (emphasis added).

In *Central Wesleyan*, the Court of Appeals concluded the district court did not abuse its discretion in finding the adequacy factor satisfied where, *inter alia*, (1) the plaintiff exhibited "vigor" in pursuing the case; and (2) there were few if any complaints from other potential class members concerning plaintiff's representation. *Central Wesleyan*, 6 F.3d at 183. Suffice it to say, "the two factors that are now predominantly recognized as the basic guidelines for the Rule 23(a)(4) prerequisite [as to representative plaintiffs] are (1) absence of conflict and (2) assurance of vigorous prosecution." 1 Herbert B. Newberg, *supra*, § 3.22. In regard to the adequacy of class counsel, "courts consider the competence and experience of class counsel, attributes which will most often be presumed in the absence of proof to the contrary." *Id.* § 3.24.

Defendant does not contend there is any significant conflict between the representatives and the potential class members. Rather, it focuses on the element of vigor. Defendant asserts the representative Plaintiffs' are inadequate, in part, because "their knowledge of and involvement in this case [is] limited to having been told by their counsel that they had been selected to testify about what happened [to them]." Def.'s resp. at 23. Defendant rightly also asserts some of the Plaintiffs, *inter alia*, (1) did not know they were class representatives until shortly before or during their depositions; (2) had no idea what the duties of a class representative were; and (3) never read the amended complaint.[7]

While Defendant's assertions are troubling, they are not a wholly accurate portrayal of the class representatives. For instance, while Plaintiff Billy K. Evans suggested he would have grave difficulty making decisions for other class members, he also testified in

---

6. Again, the Court is cognizant of Defendant's challenges to Plaintiffs' experts' findings. While an in-depth inquiry into these findings will be undertaken at the conclusion of discovery, when all of the facts have been developed, the Court cannot say at this juncture that the proffers are so patently insupportable they do not merit consideration in the class certification equation.

7. Defendant's adequacy argument relies heavily on this Court's opinion in *Thompson v. Union Carbide Corp.*, 9 Fed.R.Serv.3d 716 (S.D.W.Va. 1987). *Thompson*, however, is an unpublished disposition and entitled to little, if any, precedential weight.

response to how he perceived his responsibilities as a class representative:

> To attempt to create a climate where something beneficial may come out of this lawsuit for not only myself but for the entire Institute community, the people that live in that community, to prevent any future shelter in place or being imprisoned in your own home in your own community without permission, and to attempt to prevent the fear that I feel of this company negligently loosing a poison in the community[.]

Dep. of Billy K. Evans at 76.

Plaintiff Harris testified his role as class representative essentially would consist of being a "mediator, consultant, liaison and confidant." Harris dep. at 40. He testified his "overall objective [was] to see that there is a safer environment in th[e] Institute area." *Id.* at 45.

Plaintiff Edna Contreras read certain documents in the case and indicated an adequate understanding of her responsibilities, stating her attorney "would get in touch with [her] and the others to find out what [they thought and] where [they stood] on the different issues" arising in the case. Dep. of Edna K. Contreras at 58.

While some of the representative Plaintiffs demonstrated less than a complete understanding of their responsibilities and of the technical legal issues, that alone does not bar conditional certification. The Court can direct remedial action to correct the problem.

Plaintiffs' counsel is instructed to explain again to the putative representatives (1) the particulars of this action, including the contents of the amended complaint and the Court's prior rulings; (2) the costs and benefits to be derived from the case; (3) the responsibilities and potential consequences of being a representative Plaintiff; and (4) the fashion in which the litigation likely will proceed from this point. Should any of the representatives express discomfort or significant confusion on these issues, class counsel should act quickly to remedy the problem by

realigning the proposed representatives and by promptly informing the Court and opposing counsel.

Counsel is further directed to (1) immediately apprise the representative Plaintiffs of all filings and make such available for inspection; and (2) inform the Court of the class action experience and practice areas of attorneys Jack W. Harang and Henry T. Dart, who shall, in addition to local counsel, endorse all pleadings.

■ The Court next addresses the competence of counsel. The analysis begins with the rule that counsel's competence and experience are presumed in the absence of contrary proof. While Plaintiffs' counsel have made some missteps in this litigation, they nonetheless (1) timely filed a complaint and successfully amended it to advance additional theories; (2) organized many individual Plaintiffs; (3) retained an expert toxicologist; (4) commissioned and financed a scientific study of emotional distress by certain psychology professors; (5) presented a fairly comprehensive motion for class certification; and (6) submitted a reasonably comprehensive plan to manage the litigation if it was certified.[8] Given these and other undertakings, and the conditional nature of the certification order, the Court finds counsel provisionally adequate and competent to pursue the litigation on behalf of the class. Plaintiffs have satisfied their burden under *Rule 23(a)*.

## C. *Rule 23(b)(3) Requirements:*

■ The Court now must determine (1) whether common questions of law or fact predominate over any questions affecting only individual members; and (2) whether a class action is superior to other available methods for fair and efficient adjudication. Regarding the first factor, one commentator has observed:

> The requirement that common questions of law and fact predominate over individual issues is the greatest barrier to (b)(3) certification. In determining the existence of predomination, courts have applied various

---

8. Defendant asserts the proposed management plan indicates counsel does "not understand the requirements for notice and class participation of

a" certified class. Def.'s resp. at 25. Unfortunately, Defendant neither elaborates nor illuminates.

standards. Some mechanically weigh the substantive issues requiring individual proof against issues that can be resolved entirely on a class basis. Others mechanically balance the estimated time necessary to litigate common issues against the time predicted for individual issues, in order to determine predomination. *The Federal Rules Advisory Committee and those courts sympathetic to class actions have adopted still another approach. The Advisory Committee suggests that the goal of predominance is to determine whether judicial economies can be fairly achieved after examining all the circumstances of the case.*

James W. Elrod, Comment, *The Use of Federal Class Actions in Mass Toxic Pollution Torts*, 56 Tenn. L.Rev. 243, 267–68 (1988) (footnotes omitted) (emphasis added); *see also* Note, *Developments in the Law—Class Actions*, 89 Harv. L.Rev. 1318, 1505 (1976).[9] The Court is also cognizant of the notion that " '[t]here may be cases in which class resolution of one issue or a small group of them will so advance the litigation that they may fairly be said to predominate.' " D. Alan Rudlin, *supra*, at 244 (quoting *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986)).

As previously noted, there are significant common issues presented here. They include (1) whether Defendant was blameless or, in the alternative, acted intentionally, recklessly or negligently in allowing the leak to occur; (2) what substances were actually leaked and their general behavior when leaked; (3) whether Defendant engaged in outrageous conduct for purposes of intentional infliction of emotional distress; (4) whether Defendant's alleged actions were willful, wanton and reckless for purposes of punitive damages; (5) the propriety of injunctive relief; and (6) whether Defendant might have some claim of immunity through a governmental requirement to respond to the emergency.

All of these issues are substantial and overriding on the resolution of the litigation as a whole. While there are individual issues of exposure, causation and some damage elements, the Court cannot conclude at this juncture that individual issues predominate[10] Resolution of the common issues is what,

---

**9.** The commentator also noted in cases generically similar to this one:

> surface water and air pollution claims may be more susceptible to class treatment than claims for contamination of soil or ground water.... [W]here air or water was the medium through which pollutants traveled, claimants have not encountered the same difficulties and have been considered to be more appropriate for class treatment. The dissemination of pollutants through air and water is subject to meteorological conditions, terrain, water flow rates, and water current directions, to name a few intervening variables—all of which contribute to a more equal dispersion of pollutants than is possible in soil contamination. Broad dissemination of pollutants through air and water leads to broad exposure with similar damage patterns, similar proof of dispersion patterns similar showings of quantity and quality of the pollution dispersed; the general effects of the pollutants on the surrounding flora, fauna, real property, or public health therefore seem quite appropriate for one-time class determination.

Elrod, *supra*, at 272. Further, it has been noted that "single-incident" cases such as this "pose[] fewer problems for class action treatment." D. Alan Rudlin, *Packaging Toxic Tort Cases for Trial: Use of Test Cases, Bifurcation and Class Actions*, 406 PLI/Lit 185, 223 (1991).

**10.** There is little doubt many of the Plaintiffs will have very minimal claims for damages. They, however, assert this as further support for maintenance of the class action, given the impractical expense to litigants of pursuing the small monetary recoveries. Plaintiffs' argument is not without analogous support in circuit precedent and elsewhere:

> Without for one moment intimating that the defendants in the case at bar are wrongdoers, an issue not yet canvassed by evidence, and one on which we have no opinion other than that the burden of proof is upon the plaintiffs to establish defendants' alleged violations of law, we are of the view that if defendants are proven to have been conspirators, the road to recovery by those who prove they were caused to suffer injury by the violators should be shortened by giving them the benefit of modern procedural devices such as a class action. *Without such a short-cut, it might not be economically practical for a holder of a relatively small individual claim to get a recovery to which he is legally entitled.*

*Windham v. American Brands Inc.*, 539 F.2d 1016, 1021 (4th Cir.1976), *modified on rehearing*, 565 F.2d 59 (4th Cir.1977) (dealing with certification under the Sherman Act).

practically speaking, will send a predictive message to both sides about the ultimate course of the litigation. For instance, if the jury in a common issues trial found Defendant (1) acted recklessly; (2) engaged in outrageous conduct; and (3) behaved in a fashion justifying punitive damages, one can imagine readily the impact such findings would have on the amicable resolution of the more fluid damages issues. On the other hand, a jury finding largely exonerating Defendant on the liability issues would sound the death knell for Plaintiffs' case. Either way, findings on the common issues may advance the litigation greatly. Accordingly, the Court finds Plaintiffs have met their burden of showing common issues predominate.

In looking at the non-exclusive four subfactors aiding determination of the second *Rule* 23(b)(3) requisite, most weigh heavily in favor of certification. First, at least now, there does not appear to be a substantial interest of potential class members in controlling the prosecution or defense of separate actions individually. Second, no one has advised the Court of significant pending litigation concerning the controversy already commenced individually by potential class members. Third, given (1) the *loci* of the parties and the events giving rise to the litigation; and (2) the applicable body of law, the litigation of claims should be concentrated in the Southern District of West Virginia.

■■■ The final subfactor, the difficulties likely to be encountered in the management of a class action under these circumstances, is most weighty. Much like W.R. Grace in *Central Wesleyan,* Defendant maintains "that individual issues will dominate this lawsuit, and that as a result, extreme manageability problems preclude class treatment." *Central Wesleyan,* 6 F.3d at 184–85. While the Court appreciates the management difficulties inherent to class actions in general [11] and this type of toxic tort/mass accident case in particular, there are many factors that militate in favor of conditional certification.[12]

---

11. The cautionary statement *in Zimmerman v. Bell,* 800 F.2d 386 (4th Cir.1986) is instructive:

> The possibility of ... individualized determinations would impose an excessive managerial burden upon the district court. When added to the different injuries suffered or avoided by putative class members, the potential for variance in [class member] circumstances becomes significant. ' "[W]hen individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." ' In this case, we cannot say that common questions predominate over individual ones, and we cannot conclude that certification under 23(b)(3) was required.

*Id.* at 390.

12. The potential management difficulties on the horizon in *Central Wesleyan* were in an entirely different universe of complexity than those one might encounter here. Nonetheless, that court affirmed the conditional certification:

> Even assuming that resolution of the eight conditionally certified issues advances the litigation, a daunting number of individual issues still loom beyond the Phase One proceeding. To establish liability, each college and university must demonstrate that a defendant's product has caused, or will cause, the institution to incur the costs of asbestos maintenance and removal. Questions of comparative fault may need to be examined in light of the role professional engineers and architects at the various colleges played in purchasing, installing, and maintaining the asbestos. Different time bar defenses may need to be considered depending on when class members have removed asbestos from their buildings. Adjudication of damages alone presents an array of issues regarding costs of removal, including the nature of the asbestos product, its condition, location, accessibility, and even labor rates in varying locales.

> While we agree with the district court that most of the certified issues are primarily factual, some are mixed questions of law and fact, such as whether defendants breached a duty of care and whether they could be liable for punitive damages. Resolution of these issues may require consideration of the laws of the jurisdiction where a particular college or university is located. Instructing a jury on the laws of multiple jurisdictions will be a significant task, and one that has not been resolved in over ten years of *School Asbestos Litigation.* Even the district court's suggested use of subclasses to consider different state laws, see *Central Wesleyan,* 143 F.R.D. at 641 & 643 n. 20, will pose management difficulties and reduce the judicial efficiency sought to be achieved through certification.

*Central Wesleyan,* 6 F.3d at 188–89. Here, the Court is faced with a single Defendant, a discrete number of chemicals and a brief temporal exposure, likely measuring less than a few hours. "In contrast, college asbestos litigation involves dozens of defendants, hundreds of asbestos products sold over decades, and a wealth of individual issues[.]" *Id.* at 189.

First, like *Central Wesleyan,* "the consolidation of recurring common issues may reduce litigation costs." *Id.* at 185. Simply put, "[s]ignificant economies may be achieved by relieving [potential class members] of the need to prove over and over" the common issues discussed above and perhaps others. *Id.* at 185; *see also Lilly,* 720 F.2d at 333 n. 8 (stating a primary purpose of the class action device is to promote "efficiency in the adjudication of duplicative claims."); *EEOC v. Federal Reserve Bank of Richmond,* 698 F.2d 633 (4th Cir.1983), *rev'd on other grounds,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) (stating "one of the reasons for Rule 23 is to relieve the burden on the courts of successive trials of the same issues."); Elrod, *supra,* at 273 (stating "Assuming trial of the common [narrow] issues were to take four weeks, this pattern can save at least four weeks trial time for each successive class member's case which proceeds to trial.").

Second, "[t]his circuit has held that settlement 'should be a factor, and an important factor, to be considered when determining certification.'" *Id.* at 185 (quoting *A.H. Robins,* 880 F.2d at 740). The Court of Appeals stressed that "[c]ourts should foster settlement in order to advantage the parties and promote 'great saving in judicial time and services.'" *Id.* In the Court's view, based on its management of the case to this point, the potential for an amicable and global resolution of claims arising from the Fire is much more likely in the context of a class action.[13]

▮ Accordingly, the Court finds conditional certification to be superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiffs' thus have met their burden under *Rule* 23(a) and (b)(3), and the Court conditionally **GRANTS** Plaintiffs' class certification motion pursuant to *Rule* 23(c)(1) and (c)(4)(A). The class certified shall consist of all persons or other entities, who or which sustained legally cognizable damages as a result of the leak of toxic gas from Defendant's Institute, West

Virginia facility on February 15, 1996. The Court declines to certify subclasses at this point. The better approach is to await the responses of potential class members to determine the necessity of subclasses.

The Court does not labor under any illusion about the difficulties certification might cause. Nonetheless, the certification is conditional, and the Court will revisit the issue if necessary, guided by the wisdom of the *Central Wesleyan* court:

> While the district court has acted within its discretion and while limited certification of the class may yield significant benefits, it is acknowledged by all that this litigation is not without its difficulties. This enormous undertaking is fraught with potential problems that may well offset the advantages that the class mechanism might afford. *Should such a situation develop, class certification may have to be reconsidered. See Stott v. Haworth,* 916 F.2d 134, 139 (4th Cir.1990) ("an order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate").

*Central Wesleyan,* 6 F.3d at 186 (emphasis added). The Court will not hesitate, either on motion or *sua sponte,* to employ its "considerable discretion to decertify the class[.]" *Id.* at 189. Reasons for decertification might include (1) numerous opt-outs or a lack of responses during the notice period; (2) continuing concerns over the appropriateness of Plaintiffs' representation of the class; and (3) the appearance of intractable problems with presenting the issues on summary judgment or to a jury.

### III. CONCLUSION

The Court conditionally **GRANTS** Plaintiffs' motion for class certification pursuant to *Rule* 23(c)(1) and (c)(4)(A). The class certified shall consist of all persons or other entities, who or which sustained legally cog-

---

**13.** There are substantial advantages too which enure to Defendant's benefit if certification is granted:

> Among the defense advantages of the class action are: (a) it defines with finality the defendant's complete potential liability; (b) it allows for final disposition of all claims, assuming no opt-outs; [and] (c) it requires defense costs to be borne only once[.] ... Evidentiary advantages also exist.
>
> D. Alan Rudlin, *supra,* at 278.

nizable injuries and damages as a result of the leak of toxic gas from Defendant's Institute, West Virginia facility on February 15, 1996.

To assure the timely disposition of the litigation, Defendant shall respond to Plaintiffs' proposed class action management plan no later than December 31. The Court will conduct a case management conference at 9:00 a.m. on January 17 to discuss (1) additional common issues for trial; (2) a comprehensive method of providing notice to potential class members; and (3) strategies for the efficient and seasonable resolution of the litigation. Following the conference, an appropriate Case Management Order will be entered.