585 S.E.2d 52 (2003)
214 W.Va. 52
In re WEST VIRGINIA REZULIN LITIGATION and
State of West Virginia, ex rel. Sandra McCaffery, et al., Petitioners,
v.
The Honorable John A. Hutchison, Judge of the Circuit Court of Raleigh County; Warner-Lambert Company; and Parke-Davis, Respondents.
Nos. 30958, 30963.
Supreme Court of Appeals of West Virginia.
Submitted February 26, 2003.
Decided July 3, 2003.
*57 Marvin W. Masters, Esq., Richard A. Monahan, Esq., Masters & Taylor, L.C., Scott S. Segal, Esq., Deborah L. McHenry, Esq., The Segal Law Firm, Charleston, Carl N. Frankovitch, Esq., Frankovitch, Anetakis, Colantonio & Simon, Weirton, James C. Peterson, Esq., Hill, Peterson, Carper, Bee & Deitzler, Charleston, H. Blair Hahn, Esq., Richardson, Patrick Westbrook & Brickman, Mt. Pleasant, SC, Guy R. Bucci, Esq., Bucci, Bailey & Javins, Charleston, J.C. Powell, Esq., Powell & Majestro, Charleston, Thomas W. Pettit, Esq., Pettit & Damron, Barboursville, for Sandra McCaffery, et al., Plaintiffs below.
Michael J. Farrell, Esq., Tamela J. White, Esq., Farrell, Farrell & Farrell, L.C., Huntington, Charles P. Goodell, Jr., Esq., Richard M. Barnes, Esq., Goodell, DeVries, Leech & *58 Dann, L.L.P., Baltimore, MD, David Klingsberg, Esq., Maris Veidemanis, Esq., Robert Grass, Esq., Kaye Scholer, L.L.P., New York, NY, for Warner-Lambert Company and Parke-Davis, Defendants below.
Jeffrey M. Wakefield, Esq., Michelle M. Marinacci, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, for Joe A. Shy, D.O., et al., Defendants below.
Holly S. Bayhan, Esq., Jennifer B. Hagedorn, Esq., Morton, Herndon & Yeager, Wheeling, for Michael Renforth, M.D., Defendant below.
Karen Kahle, Esq., Heidi Kossuth, Esq., Steptoe & Johnson, Wheeling, for West Virginia University, et al., Defendants below.
Mark W. Browning, Esq., Shuman, McCuskey & Slicer, Charleston, for Louis Ortenzio, M.D., et al., Defendants below. *53 *54 *55
*56 STARCHER, Chief Justice.
In this appeal from the Circuit Court of Raleigh County, we are asked to examine a circuit court order denying a motion to certify a class action for users of an allegedly defective prescription drug. After consideration of the briefs, the arguments of the parties, and all other matters of record, we conclude that the circuit court erred, and reverse and remand the case for proceedings as a class action.

I.

Facts & Background
This case is a consolidation of several lawsuits filed by numerous plaintiffs who used Rezulin, an oral drug that was approved by the U.S. Food and Drug Administration ("FDA") in January 1997 to treat Type II (adult onset) diabetes. Rezulin is a trade name for the drug troglitazone. The defendants in the underlying action, and appellees and respondents before this Court, are Warner-Lambert Company and Parke-Davis & Company (a division of Warner-Lambert). From February 1997 until March 2000, the defendants marketed and sold Rezulin.
The plaintiffs allege that the defendants submitted Rezulin to the FDA for evaluation in 1993, and touted the drug as a significant improvement on existing diabetes medications, while being just as safe to use. However, after reviewing data submitted by the defendants, an FDA investigator concluded in September 1996 that "the company has provided no proof that this drug ... constitutes a major therapeutic advance." The researcher also indicated that the data on Rezulin raised "some worrisome questions" because, compared to patients taking a placebo, significant numbers of patients taking Rezulin appeared to sustain liver damage.[1]
The plaintiffs allege that employees of the defendants met with the researcher's superiors at the FDA, resulting in the researcher's removal from the FDA's Rezulin evaluation. The researcher's reservations about the drug were never presented to the full committee investigating Rezulin, and the drug was approved for sale on January 29, 1997.
The plaintiffs contend that the defendants marketed Rezulin aggressively, and sought to convince both patients and doctors of the efficacy and safety of the drug. One of the advertisements produced by the defendants described Rezulin as a drug with breakthrough effectiveness and as having "Side Effects Comparable to Placebo." The defendants apparently made this claim despite the fact that their own clinical trial data showed Rezulin users were three to six times more likely to suffer liver injury than patients taking the placebo. The FDA later accused the company of making "false and misleading" statements.
*59 The plaintiffs suggest that after a year of selling Rezulin, gross sales had exceeded $1 billion, and over 900,000 patients were taking the drug. At the same time, it appears that some patients were having severe liver problems as a result of taking Rezulinand several had died. The plaintiffs contend that the defendants knew of these problems, but did little to advise doctors, patients, or the general public.[2] Further, to encourage doctors to prescribe the drug, the defendants appear to have offered doctors an indemnity plan that gave any doctorwho agreed to follow the Rezulin label"experienced legal counsel," "reimbursement of litigation expenses," and "indemnification from liability" for prescribing the drug.
The defendants assert that as problems were discovered, the label on Rezulin changed, so that doctors could avoid or discover adverse liver reactions in patients. Despite changes in the labeling of Rezulin, and an increase in the frequency of liverfunction testing of patients, the mortality of Rezulin users climbed.[3] Accordingly, on March 21, 2000, the defendants withdrew the drug from the marketplace.
The plaintiffs filed several lawsuits in circuit courts in several West Virginia counties, and those separate lawsuits were transferred to the Circuit Court of Raleigh County and consolidated into the instant action.[4] The plaintiffs generally asserted that the defendants knowingly put a defective chemicala drugon the market, which they knew or should have known was defective at the time. The plaintiffs contended that the defendants' product caused the plaintiffs to be subject to an increased risk of liver disease and injury.
The plaintiffs' actions against the defendants sought, inter alia, to recover the costs of medical monitoring necessary to determine whether the plaintiffs have sustained, or will develop in the future, any injuries from using Rezulin. West Virginia law allows a cause of action for the recovery of medical monitoring costs, "where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." Syllabus Point 2, Bower v. Westinghouse Electric Corp., 206 W.Va. 133, 522 S.E.2d 424 (1999).
The tortious conduct alleged by the plaintiffs included, inter alia, that the defendants sold a product that was defective because it was unreasonably dangerous for its intended use. The plaintiffs assert that Rezulin was defective in both its design and manufacture, and defective because of insufficient labels and warnings. We set forth the standard for a defective product in Syllabus Point 4 of Morningstar v. Black and Decker Mfg. Co., 162 W.Va. 857, 253 S.E.2d 666 (1979), where we stated:
In this jurisdiction the general test for establishing strict liability in tort is whether *60 the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made.
Another tort alleged by the plaintiffs is that the defendants, in their advertising and marketing of Rezulin, withheld material facts from patients and the public about problems with Rezulin, and thereby engaged in deceptive practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va.Code, 46-6-101, et seq. ("Consumer Protection Act"). In addition to medical monitoring costs, the plaintiffs sought damages under the Consumer Protection Act and sought punitive damages.
The plaintiffs subsequently filed a motion seeking class certification under Rule 23 of the West Virginia Rules of Civil Procedure [1998]. The plaintiffs' definition of the proposed class was: "All persons who either consumed the drug Rezulin in West Virginia or consumed the drug Rezulin after having had the drugs prescribed or sold to them in West Virginia." The plaintiffs estimate that there are approximately 5,000 people who meet this class definition.
The circuit court held a two-day hearing on the plaintiffs' class certification motion, and on December 12, 2001, issued an order denying the motion.[5] In reaching this conclusion, the circuit court made legal findings that, in effect, found that the plaintiffs could not prevail on the merits of their case.[6] The circuit court even went so far as to conclude that "the evidence shows that Rezulin was not a defective product" for the plaintiffs. Finally, the circuit court found that the plaintiffs failed to meet any of the requirements for the formation of a class action, as required by Rule 23 of the Rules of Civil Procedure. The plaintiffs subsequently filed a petition with this Court to appeal the circuit court's ruling denying certification.
After the circuit court denied their motion for class certification, the plaintiffs filed a motion asking the circuit court to remand their individual cases back to the original circuit courts from whence they were transferred, arguing that the circuit court's findings established that the plaintiffs' claims did not contain "common questions of law or fact" and were not properly consolidated before the circuit court under the terms of Rule 26.01 of the Trial Court Rules [1999]. Rule 26.01(c)(b) allows for cases to be consolidated in one circuit court if there are "two (2) or more civil actions pending in one or more circuit courts ... involving common questions of law or fact in `personal injury mass torts' allegedly incurred upon numerous claimants in connection with widely available or mass marketed products[.]" Because the circuit court found that the questions of law and fact presented by each plaintiff's case were unique, and that the cases were better resolved on an individual basis, the plaintiffs argued that the circuit court was required to *61 transfer their cases back to their original courts.
The circuit court refused to transfer the plaintiffs' cases. The plaintiffs then filed a petition for a writ of prohibition with this Court, seeking a writ to compel the circuit court to return their individual cases back to the counties where their complaints were originally filed.
We granted the plaintiffs' petition for appeal, and issued a rule to show cause why the plaintiffs' petition for a writ of prohibition should not be granted. Both issues were consolidated for consideration by the Court.

II.

Standard of Review
Our research indicates that courts review a lower court's decision granting or denying a motion for class certification with some deference, and generally look to whether the lower court abused its discretion. See, e.g., Compass Bank v. Snow, 823 So.2d 667, 671 (Ala.2001) (appellate court will apply "an abuse-of-discretion standard of review to a trial court's class-certification order, but we will review de novo the question whether the trial court applied the correct legal standard in reaching its decision."); Associated Medical Networks, Ltd. v. Lewis, 785 N.E.2d 230, 234 (Ind.App.2003) ("We review a trial court's decision to certify a class action for an abuse of discretion. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court."); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 748, 911 S.W.2d 956, 958 (Ark.1995) ("This court reviews class certification under an abuse of discretion standard."); Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1022 (11th Cir.1996) ("We review the district court's grant of class certification for an abuse of discretion.").
The court in Allison v. Citgo Petroleum Corp., 151 F.3d 402, 408 (5th Cir.1998) stated:
[T]he district court maintains substantial discretion in determining whether to certify a class action, a decision we review only for abuse. Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation. Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo.

(Citations omitted.)
We therefore conclude that this Court will review a circuit court's order granting or denying a motion for class certification under an abuse of discretion standard. Of course, the circuit court's discretion must be exercised in the context of the appropriate rules of procedure.
In the instant case, the circuit court was called upon to apply and interpret Rule 23 of the West Virginia Rules of Civil Procedure. As we stated in Syllabus Point 4 of Keesecker v. Bird, 200 W.Va. 667, 490 S.E.2d 754 (1997), "An interpretation of the West Virginia Rules of Civil Procedure presents a question of law subject to a de novo review."
All of the parties in the instant case cite to numerous federal cases, in support of their various arguments. The circuit court, in its order denying class certification, appears to have relied almost exclusively on federal cases interpreting Rule 23 of the Federal Rules of Civil Procedureand denying class certificationin drug or medical device actions. As we made clear in Syllabus Point 3 of Brooks v. Isinghood, 213 W.Va. 675, 584 S.E.2d 531 (2003), "[a] federal case interpreting a federal counterpart to a West Virginia rule of procedure may be persuasive, but it is not binding or controlling." Our reasoning for this rule is to avoid having our legal analysis of our Rules "amount to nothing more than Pavlovian responses to federal decisional law." 213 W.Va. at 675, 584 S.E.2d at 531, (quoting Stone v. St. Joseph's Hosp. of Parkersburg, 208 W.Va. 91, 112, 538 S.E.2d 389, 410 (2000) (McGraw, J., concurring, in part, and dissenting, in part) (holding that West Virginia disability discrimination law "is not mechanically tied to federal disability discrimination jurisprudence.")).
*62 The plaintiffs are also seeking a writ of prohibition. A writ of prohibition lies "as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W. Va.Code, 53-1-1 [1923]. The law governing prohibition in this instance is set forth in Syllabus Point 4 of State ex rel. Hoover v. Berger, 199 W.Va. 12, 483 S.E.2d 12 (1996):
In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an often repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.
With these standards in mind, we consider the parties' arguments.

III.

Discussion

A.

Purpose of Rule 23
Rule 23 of the West Virginia Rules of Civil Procedure governs the establishment of class actions in West Virginia. "In general, class actions are a flexible vehicle for correcting wrongs committed by large-scale enterprise upon individual consumers." McFoy v. Amerigas, Inc., 170 W.Va. 526, 533, 295 S.E.2d 16, 24 (1982). The rule is a procedural device that was adopted with the goals of economies of time, effort and expense, uniformity of decisions, the promotion of efficiency and fairness in handling large numbers of similar claims. See, e.g., Life of the Land v. Land Use Commission of State of Hawaii, 63 Haw. 166, 178, 623 P.2d 431, 442 (1981); Lilian v. Commonwealth, 467 Pa. 15, 19, 354 A.2d 250, 253 (1976).
Rule 23 provides trial courts with a tool to vindicate the rights of numerous claimants in one action when individual actions might be impracticable. Hicks v. Milwaukee County, 71 Wis.2d 401, 238 N.W.2d 509 (1976). A primary function of the class action is to provide a mechanism to litigate small damage claims which could not otherwise be economically litigated. As we stated in State ex rel. Dunlap v. Berger, 211 W.Va. 549, 562, 567 S.E.2d 265, 278 (2002) (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689, 709 (1997)):
The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.
"The party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 of the West Virginia Rules of Civil Procedure have been satisfied." Syllabus Point 6, Jefferson County Board of Education v. Jefferson County Education Association, 183 W.Va. 15, 393 S.E.2d 653 (1990). As we have observed, "[w]hether the requisites for a class action exist rests within the sound discretion of the trial court." Syllabus Point 5, Mitchem v. Melton, 167 W.Va. 21, 277 S.E.2d 895 (1981). A circuit court should determine whether the prerequisites of a class action have been established "[a]s soon as practicable after the commencement of [the] action." Rule 23(c)(1).

*63 B.

Consideration of the Merits of a Party's Claims
A circuit court's consideration of a motion for class certification should not become a mini-trial on the merits of the parties' contentions. As we stated in Burks v. Wymer, 172 W.Va. 478, 486 307 S.E.2d 647, 654 (1983)(quoting Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974)), "[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."
Allowing inquiry into the substantive merits of a party's claims or defenses in the context of a class certification motion deprives the party of the right to trial by jury on the claims. See Guarantee Ins. Agency Co. v. Mid-Contintental Realty Corp., 57 F.R.D. 555, 564 (N.D.Ill., 1972). Because Rule 23 requires a circuit court to rule on a class certification motion "as soon as practicable," consideration of the merits of the parties' claims would often amount to a court considering summary judgment before the parties have had adequate time for discovery. Moreover, consideration of the merits of a party's claims or defenses is discouraged by the express language of the rule, because Rule 23(c)(1) states that courts should rule upon, alter, or amend any decision about a class certification motion "before the decision on the merits."[7]
Accordingly, when a circuit court is evaluating a motion for class certification under Rule 23, the dispositive question "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Miller v. Mackey Intern., Inc., 452 F.2d 424, 427 (5th Cir.1971).
The circuit court's order in the instant case indicates that the circuit judge did both consider and make determinations regarding the merits of the parties' claims and defenses while considering the motion for class certification. For example, the circuit court concluded that class-wide relief was not possible because "at least 95% of the people who took Rezulin `tolerated the drug well without developing any form of liver reaction[.]"' The circuit court concluded that the representative plaintiffs were not typical of class members because they appeared to have adverse liver problemsbut then also concluded that "the evidence shows that Rezulin was not a defective product for [the plaintiffs]." These factual conclusions were not relevant to the circuit court's consideration of whether the requirements of Rule 23 were met, and as it appears the circuit court substantially turned its decision to deny the plaintiffs' class certification motion on the merits of the plaintiffs' and defendants' evidence, *64 the circuit court thereby abused its discretion.

C.

Requirements for Class Certification under Rule 23(a)
Rule 23 specifies that the party seeking class certification must meet all four requirements under Rule 23(a), and meet one of the three requirements under Rule 23(b).[8] The four prerequisites that a party must meet under Rule 23(a) before a case may be certified as a class action are: (1) that the class is so numerous that joinder of all members is impractical (the "numerosity" requirement); (2) that there are questions of law or fact common to the class (the "commonality" requirement); (3) that the claims or defenses of the representative parties are typical of those of the class (the "typicality" requirement); and (4) that the representative parties will adequately protect the interests of the class (the "adequacy of representation" requirement).
Rule 23(b) sets forth the following types of class actions that are maintainable and their requirements, of which the moving party must qualify under only one:
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
(1) The prosecution of separate actions by or against individual members of the class would create a risk of
(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense *65 of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
In sum, before certifying a class, a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a) numerosity, commonality, typicality, and adequacy of representationand has satisfied one of the three subdivisions of Rule 23(b).[9]See Lukenas v. Bryce's Mountain Resort, Inc., 538 F.2d 594, 595 n. 2 (4th Cir.1976) ("To maintain a class action, one must satisfy all four of the provisions of [Rule 23] section (a) and one of the subdivisions of section (b).") As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party. Mitchem v. Melton, 167 W.Va. 21, 28, 277 S.E.2d 895, 899 (1981) ("If the requirements of Rule 23 are met, then the class should be allowed."). Any question as to whether a case should proceed as a class in a doubtful case should be resolved in favor of allowing class certification. Esplin v. Hirschi, 402 F.2d 94, 101 (10th Cir.1968), cert denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969) ("[T]he interests of justice require that in a doubtful case ... any error, if there is to be one, should be committed in favor of allowing the class action.").
As we set forth below in further detail, the circuit court concluded that the plaintiffs in the instant case failed to meet any of the requirements under either Rule 23(a) or (b).

1. The "Numerosity" Requirement of Rule 23(a)(1)

The numerosity provision of Rule 23(a)(1) requires that a class be so numerous that joinder of all of its members is "impracticable." It is not necessary to establish that joinder is impossible; rather, the test is impracticability. "[T]he test for `impracticability' of joining all members does not mean `impossibility' but only difficulty or inconvenience of joining all members." Mitchem v. Melton, 167 W.Va. 21, 33, 277 S.E.2d 895, 902 (1981) (citations omitted). See also In re Oxford Health Plans, Inc., 191 F.R.D. 369, 374 (S.D.N.Y.2000) ("Impracticability means difficulty or inconvenience of joinder; the rule does not require impossibility of joinder."); Goldstein v. North Jersey Trust Co., 39 F.R.D. 363, 367 (S.D.N.Y.1966) ("the meaning to be ascribed to the word `impracticable,'... should be `impractical,' `unwise' or `imprudent' rather than `incapable of being performed' or `infeasible[.]'")
There is no "magic minimum number that breathes life into a class ... and lack of knowledge of the exact number of persons affected is not a bar to certification[.]" Clarkson v. Coughlin, 783 F.Supp. 789, 798 (S.D.N.Y.1992). Only one named class representativewho is a member of the proposed classis required for filing a class action. Fiore v. Hudson County Employees Pension Comm'n, 151 N.J.Super. 524, 526-29, 377 A.2d 702, 703-04 (App.Div.1977). Courts have certified class actions when there have been as few as seventeen to twenty members of the class (Arkansas Educ. Ass'n v. Board of Educ., 446 F.2d 763 (8th Cir.1971)); thirty-five to seventy members (Fidelis Corp. v. Litton Industries, Inc., 293 F.Supp. 164 (S.D.N.Y.1968)); seventy members (Korn v. Franchard Corp., 456 F.2d 1206 (2d Cir.1972)); 123 members (Temple University v. Pennsylvania Dept. of Public Welfare, 30 Pa.Cmwlth. 595, 374 A.2d 991 (1977)); and 204 members (Ablin v. Bell *66 Telephone Co., 291 Pa.Super. 40, 435 A.2d 208 (1981)).
A party seeking class certification is not required to prove the identity of each class member or the specific number of members. Stambaugh v. Kansas Dept. of Corrections, 151 F.R.D. 664, 673 (D.Kan. 1993). A court may properly rely on reasonable estimates of the number of members in the proposed class. Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 436 (10th Cir.1978).
Furthermore, a circuit court may not deny a class certification motion merely because some members of the class have not suffered an injury or loss, or because there are members who may not want to participate in the class action. As we stated in Syllabus Point 2 of State ex rel. Metropolitan Life Ins. Co. v. Starcher, 196 W.Va. 519, 474 S.E.2d 186 (1996):
To demonstrate the existence of a class pursuant to Rule 23 of the West Virginia Rules of Civil Procedure, it is not required that each class member be identified, but only that the class can be objectively defined. It is not a proper objection to certification that the class as defined may include some members who do not have claims because certification is conditional and may be altered, expanded, subdivided, or vacated as the case progresses toward resolution on the merits.
In support of our holding in the Metropolitan Life case, we relied upon Joseph v. General Motors Corp., 109 F.R.D. 635, 639 (D.Colo. 1986), where the district court concluded that "the fact that the class may initially include persons who have not had difficulties with their V8-6-4 engines or who do not wish to have these purported problems remedied is not important at this stage of the litigation."
In the instant case, the plaintiffs allege that there are approximately 5,000 individuals who meet their proposed class definition, of which only about 2,000 are represented by plaintiffs' counsel.[10] The circuit court, however, concluded that "the plaintiffs have not shown that West Virginians who sustained an injury from Rezulin use are `so numerous that joinder of all members is impracticable,' as required by Rule 23(a)(1)." We find that it would be highly impractical for plaintiffs' counsel to find, let alone join in the instant action, all persons who either consumed the drug Rezulin in West Virginia or consumed the drug Rezulin after having had the drugs prescribed or sold to them in West Virginia. We therefore find that the circuit court erred in concluding that the plaintiffs failed to meet the numerosity requirement of Rule 23(a).
We also note that the circuit court's ruling regarding numerosity hinged on consideration of the merits of the parties' claims and defenses. The circuit court held that the numerosity requirement was not met because *67 the plaintiffs failed to "identif[y] anyone else in the State who allegedly has a Rezulin-related injury." We reiterate that the plaintiffs were not required to show, at the class certification stage, that any person who has a claim also currently has a Rezulin-related physical injury. The plaintiffs are primarily seeking relief relating to medical monitoring. The plaintiffs are not required, at the class certification stage, to identify the specific injuries of each class member, and it was error for the circuit court to so hold.

2. The "Commonality" Requirement of Rule 23(a)(2)

The "commonality" requirement of Rule 23(a)(2) requires that the party seeking class certification show that "there are questions of law or fact common to the class." "A common nucleus of operative fact [or law] is usually enough to satisfy the commonality requirement." Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir.1992). "The threshold of `commonality' is not high," and "requires only that resolution of the common questions affect all or a substantial number of the class members." Jenkins v. Raymark Industries, Inc., 782 F.2d 468, 472 (5th Cir. 1986).
Commonality requires that class members share a single common issue. Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 56 (3d Cir.1994). "However, not every issue in the case must be common to all class members." O'Connor v. Boeing North American, Inc., 184 F.R.D. 311, 330 (C.D.Cal.1998). The common questions need be neither important nor controlling, and one significant common question of law or fact will satisfy this requirement. Georgia State Conference of Branches of NAACP v. Georgia, 99 F.R.D. 16, 25 (S.D.Ga.1983). In other words, "[t]he class `as a whole' must raise at least one common question of law or fact to make adjudication of the issues as a class action appropriate to conserve judicial and private resources." Philip Stephen Fuoco and Robert F. Williams, "Class Actions in New Jersey State Courts," 24 Rutgers L.J. 737, 752 (1993).
The leading commentator on class action law summarizes the rule in this way:
The Rule 23(a)(2) prerequisite requires only a single issue common to the class. Individual issues will often be present in a class action, especially in connection with individual defenses against class plaintiffs, rights of individual class members to recover in the event a violation is established, and the type or amount of relief individual class members may be entitled to receive. Nevertheless, it is settled that the common issues need not be dispositive of the litigation. The fact that class members must individually demonstrate their right to recover, or that they may suffer varying degrees of injury, will not bar a class action; nor is a class action precluded by the presence of individual defenses against class plaintiffs.
A. Conte and H. Newberg, 1 Newberg on Class Actions, 4th Ed., § 3:12 at 314-315 (2002).
In the instant case, the circuit court denied class certification under Rule 23(a)(2) because "the evidence shows that Rezulin was not a defective product" for the plaintiffs, and that therefore "the defendants have shown that the common issues identified by the plaintiffs are not in fact common."
The plaintiffs, however, have identified numerous issues which they contend are common to all potential class members, including whether the drug was not reasonably safe for its intended use by the public as a whole; whether the drug was defective because its instructions and warnings were not adequate for the reasonable, prudent consumer; whether the defendants acted with each other and third parties to mislead physicians and the public about the efficacy and safety of the drug; and whether the defendants violated the Consumer Protection Act in its actions toward West Virginia consumers. We find that issues such as these are common to all or a substantial number of potential class members, and therefore conclude that the circuit court erred in finding otherwise.

3. The "Typicality" Requirement of Rule 23(a)(3)

"The first two prerequisites of Rule 23, joinder impracticability and common questions, *68 focus on characteristics of the class.... The second two prerequisites, typicality and adequate representation, focus instead on the desired characteristics of the class representative." 1 Newberg on Class Actions, 4th Ed., § 3:13 at 316-17.
The "typicality" requirement of Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." A representative party's claim or defense "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." 1 Newberg on Class Actions, 4th Ed., § 3:13 at 328. In accord, In re American Medical Systems, Inc., 75 F.3d 1069, 1082 (6th Cir.1996). Rule 23(a)(3) only requires that the class representatives' claims be typical of the other class members' claims, not that the claims be identical. Christman v. American Cyanamid Co., 92 F.R.D. 441, 451 (N.D.W.Va.1981). When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment. United Broth. of Carpenters and Joiners of America, Local 899 v. Phoenix Associates, Inc., 152 F.R.D. 518, 522 (S.D.W.V.1994).
This "typicality" requirement limits the claims of all class members "to those fairly encompassed by the named plaintiff's claims." General Tel. Co. v. E.E.O.C., 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319, 330 (1980). The rationale behind the requirement is that a class representative with typical claims "will pursue his or her own self-interest in the litigation, and in so doing, will advance the interests of the class members[.]" 1 Newberg on Class Actions, 4th Ed., § 3:13 at 325. "[M]ere anticipation that all class members will benefit from the suit ... is not enough. But interests sufficiently parallel to ensure a vigorous and full presentation of all potential claims for relief should satisfy Rule 23(a)(3)." Weiss v. York Hosp., 745 F.2d 786, 810 (3d Cir.1984), cert. denied, 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).
However, "differences in the situation of each plaintiff or each class member do not necessarily defeat typicality: The harm suffered by the named plaintiffs may differ in degree from that suffered by other members of the class so long as the harm suffered is of the same type." Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 65 (S.D.Ohio 1991) (citations omitted). Furthermore, "[t]he fact that a defense may be asserted against the named representatives, as well as some other class members, but not the class as a whole, does not destroy the representatives' status." Shutts v. Phillips Petroleum Co., 235 Kan. 195, 208, 679 P.2d 1159, 1172 (1984), aff'd in part and rev'd in part on other grounds, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).
In the instant case, the circuit court ruled that "representative plaintiffs must exist for each type of ... assurance, or medical advice each plaintiff received," and then concluded that "[b]ecause Rezulin was effective for each proposed class representative, without the side-effects that they experienced from other diabetes medications, these individuals are not typical of any putative class members[.]" The Court also found that the claims made by the plaintiffs "are so varied that there can be no `typical' Rezulin user."
After reviewing the record and briefs of the parties, we conclude that the plaintiffs are asserting that the class is seeking relief related to medical monitoring due to their use of Rezulin. Thus, because their exposure to Rezulin alone is claimed as the basis for this monitoring, the class and the representatives have nearly identical claims. Additionally, the plaintiffs are alleging that the defendants violated the Consumer Protection Act through conduct directed toward West Virginia as a whole, not toward individual citizens. We therefore perceive that the claims asserted by the class representatives are typical of those of other class members, and find that the circuit court erred in holding otherwise.

4. The "Adequacy of Representation" Requirement under Rule 23(a)(4)

The "adequacy of representation" requirement of Rule 23(a)(4) requires that the party seeking class action status show *69 that the "representative parties will fairly and adequately protect the interests of the class." "First, the adequacy of representation inquiry tests the qualifications of the counsel to represent the class. Second, it serves to uncover conflicts of interest between named parties and the class they seek to represent." In re Prudential Ins. Co. of America Sales Practices Litigation, 148 F.3d 283, 312 (3d Cir.1998) (internal citations omitted). In accord, Black v. Rhone-Poulenc, Inc., 173 F.R.D. 156, 162 (S.D.W.V.1996) ("When assessing the class representatives' ability to adequately represent the interest of the class, the Court must consider the abilities of both the attorneys who represent the class representatives, and the class representatives themselves.")
The first factor in determining the vigor of representation concerns the representatives' attorneys' resources to investigate class claims and to contact other class members. See Bowen v. General Motors Corp. A.C. Spark Plug Div., 542 F.Supp. 94, 100-02 (N.D.Ohio 1981); Ingram v. Joe Conrad Chevrolet, Inc., 90 F.R.D. 129, 132 (E.D.Ky. 1981). It also concerns the competence and experience of class counsel. Susman v. Lincoln American Corp., 561 F.2d 86, 90 (7th Cir.1977); Harris v. General Development Corp., 127 F.R.D. 655, 662 (N.D.Ill.1989). The defendants in the instant case do not challenge the ability of the plaintiffs' counsel to vigorously and competently represent the purported class.
In the instant case, the defendants challenge the second factor and argue that the interests of the class representatives are antagonistic to the interests of the class members, because the plaintiffs assert that the class representatives have sustained certain specific injuries from using Rezulin, while the proposed class includes both injured and uninjured persons. The circuit court agreed with the defendants, and ruled that "the named plaintiffs cannot adequately represent putative class members who are asymptomatic." The circuit court also found that "all former West Virginia Rezulin users may not desire class certification ... because those with strong cases may well be better off going it alone." (Citations omitted.)
After reviewing the record and briefs of the parties, we find that the class representatives share a strong interest in establishing the liability of the defendants, and seek the same types of relief and damages as requested for other class members. While the defendants correctly indicate that the damages sustained by some of the current class representatives and class members may not be identical, other courts have not found this to be an impediment to class certification. See, e.g., Black v. Rhone-Poulenc, Inc., 173 F.R.D. 156 (S.D.W.Va.1996) (class action members and representatives suffered different physical injuries, some only "inconvenience and emotional distress," from exposure to chemicals from chemical plant fire); Watson v. Shell Oil Co., 979 F.2d 1014 (5th Cir.1992) (class members and representatives sustained different personal injury and property damage claims from oil refinery explosion); Coburn v. 4-R Corp., 77 F.R.D. 43 (E.D.Ky.1977) (class members and representatives sustained different damages as result of Beverly Hills Supper Club fire).
Moreover, the alternative to class adjudicationtrying all 5,000 claims together as a "mass" proceeding consolidated for trial under Rule 42 of the Rules of Civil Proceduresuffers from the same problems. The courts of this State have successfully managed to overcome and try, en masse, cases that have included vast differences in injuries between multiple plaintiffs, and cases where the plaintiffs were seeking punitive damages. See, e.g., State ex rel. Mobil Corp. v. Gaughan, 211 W.Va. 106, 563 S.E.2d 419 (2002)("presumably several thousands of asbestos personal injury claims"); State ex rel. Allman v. MacQueen, 209 W.Va. 726, 551 S.E.2d 369 (2001) ("approximately 8,000 asbestos plaintiffs"); Abbott v. Owens-Corning Fiberglas Corp., 191 W.Va. 198, 444 S.E.2d 285 (1994) (1,015 plaintiffs exposed to asbestos). The class action vehicle appears to be a superior option to consolidation, as it gives the circuit court greater control over class representatives and class counsel. The circuit court therefore erred on this point.

D.

Requirements for Class Certification under Rule 23(b)
In its order denying class certification, the circuit court concluded that the plaintiffs had *70 failed to meet any of the three requirements under Rule 23(b). On appeal, the plaintiffs assert that class certification is appropriate under Rules 23(b)(2) and (3); the plaintiffs do not assert a position as to whether they meet the qualifications of Rule 23(b)(1), and we therefore do not discuss this part of the rule.

1. Equitable Relief under Rule 23(b)(2)

The plaintiffs argue that because the same defendants acted in the same manner toward the entire class, the trial court may exercise its equitable powers through Rule 23(b)(2) in fashioning relief to establish a medical monitoring fund for the class members. This equitable fund would not pay damages directly to any members of the class, but would rather provide a court-administered fund that could pay to medical providers the cost of any testing.
The defendants argue, and the circuit court below agreed, that in order for the plaintiffs to be successful in their claim for medical monitoring damages, they must first prove that Rezulin was defective, or prove that the Consumer Protection Act was violated. The defendants assert that whether a product was defective, or whether the Consumer Protection Act was violated, involves individual factual determinations that are different for each member of the proposed class. The defendants therefore argue that a class action is not feasible under Rule 23(b)(2) because the proposed class will not be "cohesive."
Rule 23(b)(2) allows a court to certify a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class," and the representatives are seeking "final injunctive relief or corresponding declaratory relief" for the entire class. Class action treatment is particularly useful in this situation because it will determine the propriety of the behavior of the party opposing the class in a single action. Fuller v. Fruehauf Trailer Corp., 168 F.R.D. 588, 602 (E.D.Mich.1996).
The term "generally applicable" in Rule 23(b)(2) signifies "that the party opposing the class does not have to act directly against each member of the class." Quigley v. Braniff Airways, Inc., 85 F.R.D. 74, 79 (N.D.Tex.1979) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Fed. Practice & Procedure, Civ.2d, § 1775). See also, 2 Newberg on Class Actions, 4th Ed., § 4:11 at 55 ("the defendant's conduct described in the complaint need not be directed or damaging to every member of the class"). The key is whether the actions of the party opposing the class would affect all persons similarly situated, so that the acts apply generally to the whole class. Santiago v. City of Philadelphia, 72 F.R.D. 619 (E.D.Pa.1976). Courts have also interpreted the "generally applicable" requirement to mean that the party opposing the class either has acted in a consistent manner toward members of the class so that his actions may be viewed as part of a pattern of activity, see, e.g., Mortimore v. F.D.I.C., 197 F.R.D. 432 (W.D.Wash.2000) (defendant improperly calculated adjustable rate mortgages), or has established or acted pursuant to a regulatory scheme common to all class members. See, e.g., Geen v. Foschio, 94 F.R.D. 177 (W.D.N.Y.1982)(government policy automatically denied licenses to anyone with certain medical conditions). Action or inaction is directed to a class within the meaning of Rule 23(b)(2) even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds that have general application to the class. Gibbs v. Titelman, 369 F.Supp. 38, 52 (E.D.Pa.1973), reversed on other grounds, 502 F.2d 1107 (3d Cir.1974).
The second prerequisite to bringing an action under Rule 23(b)(2) is that final injunctive or declaratory relief must be requested against the party opposing the class. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A Federal Practice & Procedure, Civ.2d, § 1775 at 457. Injunctive relief embraces all forms of equitable judicial orders, whether they be mandatory or prohibitory. Id. at 457-58. But the class must be seeking a "final" injunction; a request for a temporary restraining order or a preliminary injunction does not qualify under Rule 23(b)(2). Id. at 458-61.
Other jurisdictions have concluded that a court's equitable powers, as specified under *71 Rule 23(b)(2), are appropriate for establishing and administering a medical monitoring program. For instance, in Friends for All Children, Inc. v. Lockheed Aircraft Corp., 746 F.2d 816, 828-31 (D.C.Cir.1984), the court upheld a district court's preliminary injunction compelling the defendants to pay money to the court to create a medical monitoring fund. In Day v. NLO, 851 F.Supp. 869, 886 (S.D.Ohio 1994), the court approved the creation of a court-supervised fund under Rule 23(b)(2), holding that "[t]he use of the Courts injunctive powers to oversee and direct medical surveillance is vastly superior to a lump sum monetary payment... A court supervised fund will also assure that the medical monitoring damages will be used to compensate for medical examinations and tests actually administered." See also Barth v. Firestone Tire and Rubber Co., 661 F.Supp. 193, 203-205 (N.D.Cal.1987) (affirming plaintiffs' right to seek a medical monitoring injunction because the exposure creating the need for surveillance was "the very essence of irreparable harm"); Gibbs v. E.I. DuPont De Nemours & Co., Inc., 876 F.Supp. 475, 481 (W.D.N.Y.1995) ("A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff's health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than `predominantly money damages' and therefore is properly certified under Rule 23(b)(2)"); Hansen v. Mountain Fuel Supply, 858 P.2d 970, 982 (Utah 1993) (use of a court-supervised fund to administer medical monitoring "is a highly appropriate use of the Court's equitable powers"); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795, 825 (1993) (holding that court-supervised funds for medical monitoring for mass-exposure toxic torts cases best serve public health interests).
We find that under Rule 23(b)(2), after liability has been established, a court may exercise its equitable powers to establish and administer a court-supervised medical monitoring program to oversee and direct medical surveillance, and provide for medical examinations and testing of members of a class.
Furthermore, the Consumer Protection Act, specifically W.Va.Code, 46A-6-106(1) [1974], states that when a plaintiff has proven an ascertainable loss caused by some unfair trade practice by the defendant, "[t]he court may, in its discretion, provide such equitable relief as it deems necessary and proper." We therefore also find that Rule 23(b)(2) of the West Virginia Rules of Civil Procedure allows a court to exercise its equitable powers to award equitable relief under W.Va.Code, 46A-6-106 of the Consumer Protection Act.
The plaintiffs assert that all members of the proposed class took the same drug, and were subject to the same risk of possible injuries. The drug was made by the same defendants, and the defendants' conduct was directed toward a discrete population: the plaintiffs, all West Virginia diabetics who needed medication for control of their condition. After examining the record and briefs of the parties, we conclude that the plaintiffs have met the initial requirements of Rule 23(b)(2) and shown that the defendants acted, or refused to act, in a manner generally applicable to the entire proposed class. The circuit court therefore erred in holding otherwise.

2. "Predominance" and "Superiority" Requirements under Rule 23(b)(3)

Under Rule 23(b)(3), a class action may be certified to proceed on behalf of a class if the trial court finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and finds that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."
The predominance criterion in Rule 23(b)(3) is a corollary to the "commonality" requirement found in Rule 23(a)(2). While the "commonality" requirement simply requires a showing of common questions, the "predominance" requirement requires a showing that the common questions of law or fact outweigh individual questions.
*72 "A conclusion on the issue of predominance requires an evaluation of the legal issues and the proof needed to establish them. As a matter of efficient judicial administration, the goal is to save time and money for the parties and the public and to promote consistent decisions for people with similar claims." In the Matter of Cadillac V8-6-4 Class Action, 93 N.J. 412, 430, 461 A.2d 736, 745 (1983). The predominance requirement is not a rigid test, but rather contemplates a review of many factors, the central question being whether "adjudication of the common issues in the particular suit has important and desirable advantages of judicial economy compared to all other issues, or when viewed by themselves." 2 Newberg on Class Actions, 4th Ed., § 4:25 at 174.
In discussing which test courts should use to determine whether common questions predominate, one court observed:
The requirement that common questions of law and fact predominate over individual issues is the greatest barrier to (b)(3) certification. In determining the existence of predomination, courts have applied various standards. Some mechanically weigh the substantive issues requiring individual proof against issues that can be resolved entirely on a class basis. Others mechanically balance the estimated time necessary to litigate common issues against the time predicted for individual issues, in order to determine predomination. The Federal Rules Advisory Committee and those courts sympathetic to class actions have adopted still another approach. The Advisory Committee suggests that the goal of predominance is to determine whether judicial economies can be fairly achieved after examining all the circumstances of the case.
Black v. Rhone-Poulenc, Inc., 173 F.R.D. at 163-164 (quoting James W. Elrod, Comment, The Use of Federal Class Actions in Mass Toxic Pollution Torts, 56 Tenn.L.Rev. 243, 267-68 (1988)).
The predominance requirement does not demand that common issues be dispositive, or even determinative; it is not a comparison of the amount of court time needed to adjudicate common issues versus individual issues; nor is it a scale-balancing test of the number of issues suitable for either common or individual treatment. 2 Newberg on Class Actions, 4th Ed., § 4:25 at 169-173. Rather, "[a] single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions." Id. at 172. The presence of individual issues may pose management problems for the circuit court, but courts have a variety of procedural options under Rule 23(c) and (d) to reduce the burden of resolving individual damage issues, including bifurcated trials, use of subclasses or masters, pilot or test cases with selected class members, or even class decertification after liability is determined. As the leading treatise in this area states, "[c]hallenges based on ... causation, or reliance have usually been rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 2 Newberg on Class Actions, 4th Ed., § 4.26 at 241. "That class members may eventually have to make an individual showing of damages does not preclude class certification." Smith v. Behr Process Corp., 113 Wash.App. 306, 323, 54 P.3d 665, 675 (2002) (citations omitted).
The defendants assert that the plaintiffs will be required at trial to show individual causation and injury caused by some product defect, before being eligible for medical monitoring relief. Furthermore, the defendants contend that each individual plaintiff will be required to show, under the Consumer Protection Act, that the defendants committed an unfair trade practice or other violation of the Act that caused the plaintiff to buy Rezulin. The defendants therefore argue that, because there are substantial individual issues inherent in the plaintiffs' claims, these individual issues predominate over issues common to the class.
The plaintiffs, however, take the position that there are no essentially individual issues in their class-related claims. They therefore take the position that their claims, for medical monitoring under Bower v. Westinghouse Elec. Corp., 206 W.Va. 133, 522 S.E.2d 424 (1999) and for damages under the Consumer *73 Protection Act, contain exclusively class-wide issues that predominate under Rule 23(b)(3).
To begin, as we stated in Syllabus Point 2 of Bower, "[a] cause of action exists under West Virginia law for the recovery of medical monitoring costs, where it can be proven that such expenses are necessary and reasonably certain to be incurred as a proximate result of a defendant's tortious conduct." In Bower, we rejected the contention that a claim for medical monitoring costs must rest upon the existence of present and proven physical harm. To the contrary, "[t]he `injury' that underlies a claim for medical monitoring just as with any other cause of action sounding in tortis `the invasion of any legally protected interest." 206 W.Va. at 139, 522 S.E.2d at 430.
For a plaintiff to obtain relief under Bower, the plaintiff must only show "that the plaintiff has a significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." 206 W.Va. at 142, 522 S.E.2d at 433. Once that has been proven, the plaintiff must then show that "medical monitoring is, to a reasonable degree of medical certainty, necessary in order to diagnose properly the warning signs of disease ... even if the disease it is intended to diagnose is not reasonably certain to occur." 206 W.Va. at 140, 522 S.E.2d at 431 (citations omitted).
We stated a six-part test in Syllabus Point 3 of Bower:
In order to sustain a claim for medical monitoring expenses under West Virginia law, the plaintiff must prove that (1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detection of a disease possible.
The plaintiffs assert that the entire class, as a whole, meets this six-part test. First and second, the plaintiffs contend all Rezulin users were "significantly exposed" to a hazardous substance relative to the general population. The defendants argue that a drug approved by the FDA can never be a "hazardous substance;" we reject this argument outright, because a defective drug, particularly one whose FDA approval was allegedly achieved as a result of incomplete, misleading or negligently-conducted research by the manufacturer, can be a substance that is exceptionally hazardous to the public. We agree with the plaintiffs that both of these factors are common to the entire class.
Third, the exposure must be the result of tortious misconduct of the defendants. We perceive from the record that much of the evidence in the instant case will be directed toward showing that the defendants' previously discussed tortious conduct was directed toward the public as a whole, and not toward any individual plaintiff.
The final three elements of the Bowers criteria are less clear from the record, but it appears that the plaintiffs' evidence will show that they have an increased risk of contracting a serious disease, and that the increased risk makes it reasonably necessary for the plaintiffs to undergo periodic medical examinations using existing monitoring procedures, different from what would have been required of the plaintiffs in the absence of their use of Rezulin. It also appears from the record that the plaintiffs intend to prove these final elements as to all class members, and not on an individualized basis.
The plaintiffs contend that the injuries or diseases that result from the use of Rezulin are not related to the dose taken by each patient. Instead, they contend that taking the drug triggered, in some instances, an idiosyncratic reaction that resulted in known and testable injuries. Accordingly, because all plaintiffs in the proposed class took Rezulin, the plaintiffs assert that all members of the class are at risk for an idiosyncratic reaction and injury. We conclude that the circuit court erred in holding that common issues regarding medical monitoring did not predominate over individual issues.
*74 We must also resolve the question of whether common issues predominate over individual issues regarding the plaintiffs' action under the Consumer Protection Act. W.Va. Code, 46A-6-106(1) authorizes a cause of action for "[a]ny person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article[.]"[11]W.Va.Code, 46A-6-102(f)(13) [1996] prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby." (Emphasis added.)
As stated previously, the circuit court interpreted these two statutes as requiring that each putative class member would have to prove that a violation of the Consumer Protection Act caused him or her to purchase Rezulin, and to prove specific damages resulting from that purchase.
We have never examined W.Va.Code, 46A-6-106 in detail. In Orlando v. Finance One of W.Va., Inc., 179 W.Va. 447, 369 S.E.2d 882 (1988), we gave the statute a cursory glance in approving a circuit court's dismissal of a consumer's attempt to recover damages from a lender for an unconscionable clause in a loan contracteven though the lender never tried to enforce the clause. We quoted the text of W.Va.Code, 46A-6-106, and concluded that because the lender "made no attempt to enforce Clause # 14, the appellants have suffered no `ascertainable loss of money or property' as a result of the inclusion of Clause # 14 in the loan contract.... Thus, while the inclusion of Clause # 14 was an unfair practice, we find that the appellants are not entitled to recover damages." 179 W.Va. at 453, 369 S.E.2d at 888.
Other jurisdictions interpreting statutes similar to ours have concluded that consumers can meet the "ascertainable loss" requirement without proving that the consumer suffered a specific monetary loss based upon the unfair or deceptive acts or practices. In the leading case of Hinchliffe v. American Motors Corp., 184 Conn. 607, 440 A.2d 810 (1981), the court interpreted a Connecticut statute that allowed a cause of action by "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b ...." 184 Conn. at 612, 440 A.2d at 813. The Connecticut court concluded that the words "any ascertainable loss" do not require a plaintiff to prove a specific amount of actual damages in order to make out a prima facie case. 184 Conn. at 612-613, 440 A.2d 810, 813-814.
Our conclusion finds initial support in the language chosen by the legislature when it framed § 42-110g(a). Where drafters meant "actual damages," they employed those exact words. The use of different terms within the same sentence of a statute plainly implies that differing meanings were intended. Moreover, the inclusion of the word "ascertainable" to modify the word "loss" indicates that plaintiffs are not required to prove actual damages of a specific dollar amount. "Ascertainable" means "capable of being discovered, observed or established."
"Loss" has been held synonymous with deprivation, detriment and injury. It is a generic and relative term. "Damage," on the other hand, is only a species of loss.

*75 The term "loss" necessarily encompasses a broader meaning than the term "damage."
Whenever a consumer has received something other than what he bargained for, he has suffered a loss of money or property. That loss is ascertainable if it is measurable even though the precise amount of the loss is not known. CUTPA is not designed to afford a remedy for trifles. In one sense the buyer has lost the purchase price of the item because he parted with his money reasonably expecting to receive a particular item or service. When the product fails to measure up, the consumer has been injured; he has suffered a loss. In another sense he has lost the benefits of the product which he was led to believe he had purchased. That the loss does not consist of a diminution in value is immaterial, although obviously such diminution would satisfy the statute.
184 Conn. at 613, 440 A.2d at 814 (citations omitted). See also, Scott v. Western Intern. Surplus Sales, Inc., 267 Or. 512, 515, 517 P.2d 661, 662-63 (1973) ("Under the statute there is no need to allege or prove the amount of the `ascertainable loss'; the plaintiff is only claiming the minimum of $200 which is recoverable if an ascertainable loss of any amount is proved .... `Ascertainable' can reasonably be interpreted to mean, capable of being discovered, observed or established. As we have already stated, the amount of the loss is immaterial if only $200 is sought."); Miller v. American Family Publishers, 284 N.J.Super. 67, 87-89, 663 A.2d 643, 655 (1995) ("To satisfy the `ascertainable loss' requirement, a plaintiff need prove only that he has purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained.").
We conclude that for a consumer to make out a prima facie case to recover damages for "any ascertainable loss" under W.Va.Code, 46A-6-106, the consumer is not required to allege a specific amount of actual damages. If the consumer proves that he or she has purchased an item that is different from or inferior to that for which he bargained, the "ascertainable loss" requirement is satisfied.
The plaintiffs assert that in a class action, a difference in claims over the amount of damages is not sufficient to defeat class certification in an action for a refund. See In re: Auction Houses Antitrust Litig., 193 F.R.D. 162, 167 (S.D.N.Y.2000) (rejecting defendant's argument that common issues did not predominate because damages could not be calculated using the same method for every member of the class); In re NASDAQ Market-Makers Antitrust Litigation, 169 F.R.D. 493, 523 (S.D.N.Y.1996) ("neither a variety of prices nor negotiated prices is an impediment to class certification"); Wolgin v. Magic Marker Corp., 82 F.R.D. 168, 176 (E.D.Pa. 1979) ("[T]he `overwhelming weight of authority' holds that the need for individual damages calculations does not diminish the appropriateness of class action certification where common questions as to liability predominate"). Based upon this authority, we conclude that the circuit court erred in holding that the individual damages allegedly suffered by the plaintiffs as a result of the defendants' alleged misconduct predominated over the common questions relating to the defendants conduct.
Rule 23(b)(3) also requires a showing "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This requirement focuses upon a comparison of available alternatives. The defendants contend in the instant case, that case management problems will render a class adjudication impossible. We disagree. While the management of any complex class action is likely to present a challenge, there is a myriad of management devices available to the circuit court under Rule 23. But forcing numerous plaintiffs to litigate the alleged misconduct of the defendants in hundreds or thousands of repeated individual trials, especially where a plaintiff's individual damages may be relatively small, runs counter to the very purpose of a class action:
It must also be remembered that manageability is only one of the elements that goes into the balance to determine the superiority of a class action in a particular case. Other factors must also be considered, as must the purposes of Rule 23, *76 including: conserving time, effort and expense; providing a forum for small claimants; and deterring illegal activities.
2 Newberg on Class Actions, 4th Ed., § 4.32 at 277-78. As we perceive the existing record, a class action appears to be a superior method to any other method for expeditiously litigating the claims of the parties. The plaintiffs have therefore met the requirements of Rule 23(b)(3), and the circuit court erred in holding otherwise.

E.

Plaintiffs' Petition for a Writ of Prohibition
Finally, we must briefly address the plaintiffs' petition for a writ of prohibition. The plaintiffs seek a writ of prohibition to have their individual claims returned from the Circuit Court of Raleigh County to the circuit courts where they were originally filed. The plaintiffs' petition is based entirely on the circuit court's conclusion that individual issues predominated in their cases, and that there were no common issues for resolution.
As our opinion makes clear, we believe that the plaintiffs have established that "common questions of law or fact" exist. Accordingly, we need not address their contention that their cases do not meet the standard for "mass litigation" under Rule 26.01 of the Trial Court Rules.
The writ of prohibition will therefore be denied.

IV.

Conclusion
The circuit court erred in considering the merits of the parties' claims at this stage of the proceedings, and in denying the plaintiffs' motion for class certification. The circuit court's order of December 12, 2001, is therefore reversed, and the case is remanded for further proceedings.
Because of our resolution of the class action questions, the plaintiffs' petition for a writ of prohibition is denied.
Reversed and Remanded; Writ Denied.
Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.
NOTES
[1] As the researcher stated:

With respect to the liver, LFT abnormalities were more frequent in the treated groups (0/ to 2, placebo v. troglitazone [Rezulin]). More ominously, 0/70 cases of jaundice were observed in placebo-treated patients, as opposed to the 9/140 seen in troglitazone [Rezulin]-treated patients.
...
So, [their] statement that the safety profile of troglitazone [Rezulin] has been found to be no different than that of placebo-treated patients is to be taken with a grain of salt .... Thus, it is unwise to force the FDA to hastily introduce a drug into the marketplace with such potential for worrisome toxicity, by invoking a significant therapeutic effect that hasn't been proven to exist.
[2] For example, Rezulin was approved for sale in Great Britain in late 1997, but after two months' experience, the drug was removed from the market. On December 2, 1997, the United Kingdom's Medicines Control Agency stated that "based on present information, the risks of troglitazone therapy outweigh the potential benefits. It has therefore been voluntarily withdrawn from the UK as from 1 December 1997[.]" The agency's basis for concern was that it had "now become aware of over 130 cases (6 fatal) worldwide of hepatic [liver] reactions to troglitazone."
[3] As one court noted:

In February 2000, the company released a statement claiming that it believed that there were no liver-failure deaths attributable to Rezulin after the June 1999 label change. The day after this statement was made, the FDA discredited it, saying the agency had been informed of six cases of liver failure with onset after July 1999, of which at least three resulted in death.
In March 2000, doctors at the FDA and elsewhere became even more concerned about Rezulin, with one doctor writing to others that "at each juncture in the management of Rezulin's liver failure risk, hindsight shows that [the monitoring] had little or no effect and that Warner-Lambert's assertions that the liver failure problem was solved were proved false."
Desiano v. Warner-Lambert Co., 326 F.3d 339, 344 (2d Cir.2003).
[4] The plaintiffs actually filed sixteen different lawsuits in several different counties throughout West Virginia. On November 17, 2000, then-Chief Justice Elliott Maynard stayed all proceedings in all pending Rezulin cases and referred them to the Mass Litigation Panel, pursuant to West Virginia Trial Court Rule 26.01. Based upon the Panel's recommendation, on December 14, 2000, the Chief Justice referred all pending Rezulin cases to the Circuit Court of Raleigh County for consolidated proceedings under Rule 26.01.
[5] The circuit court's order has, for unknown reasons, somehow been published on Westlaw. See 2001 WL 1818442.
[6] For example, the circuit court indicated that there is "[n]o medical evidence that any patient ever developed a latent [liver] injury attributable to any drug months or years after the patient discontinued the drug," and that if a patient stopped taking a drug that caused a liver injury, the patient's liver healed. The circuit court went on to also find that any liver function testing would have insufficient sensitivity to detect liver problemsbut if problems were detected, there would be no way of knowing if the liver problem was caused by Rezulin or some other drug.

The circuit court also fashioned, as a matter of law, eight specific "criteria for medical monitoring" based upon the testimony of an expert retained by the defendants, and concluded that the plaintiffs had failed to meet these criteria. These criteria, which we discuss later in the text, are not present in our leading case on medical monitoring. Bower v. Westinghouse Electric Corp., 206 W.Va. 133, 522 S.E.2d 424 (1999). For example, the circuit court concluded that Bower requires the "[e]xistence of a relatively low-cost monitoring test" that has a "low physical `cost' to the patient," that is, a test that is not "`too invasive' and risky." The circuit court went on to findbased upon the testimony of the defendants' expertsthat a needle biopsy of the liver is the only "bedrock test" that could be used by the plaintiffs to monitor for liver problems. The circuit court concluded that the liver biopsy "fail[ed] the medical monitoring criterion that ANY medical monitoring tests be `low cost' and not too invasive."
[7] This is not to say, however, that Rule 23 mandates that a circuit court in every case must fully certify a class before proceeding to a consideration of the merits. In McFoy v. Amerigas, Inc., 170 W.Va. 526, 295 S.E.2d 16 (1982), we examined a situation where the circuit court granted summary judgment on liability against a defendant, and then certified a class action on behalf of a class of plaintiffs. We approved of this procedure, stating:

Where the factual circumstances of a case make it appropriate to determine liability before determining the class of plaintiffs, it is within the court's discretion to do so. The applicable requirement under the Federal Rules is that determination of class standing be made "as soon as practicable after the commencement of the action," Rule 23(c)(1), Fed. R.Civ.P. (1966). The Third Circuit, Sixth Circuit and District of Columbia Circuit have all allowed the trial court to make its class action determination at the entry of final judgment, or after. McLaughlin v. Wohlgemuth, 535 F.2d 251 (3rd Cir., 1976); Larionoff v. U.S., 175 U.S.App.D.C. 32, 533 F.2d 1167 (1976) aff'd, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977); Alexander v. Aero Lodge No. 735, Int'l. Ass'n. of Machinists and Aerospace Workers, AFL-CIO, 565 F.2d 1364 (6th Cir., 1977), cert. denied, 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978). We find this flexibility reasonable so long as the defendant is aware that a determination of class action standing is a distinct possibility.... This decision is in harmony with the Third Circuit's tactic in Katz v. Carte Blanche Corp., 496 F.2d 747 (1974) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) that permitted plaintiffs to proceed in a test case and move, if successful, for later consideration of class certification, and also with the general federal practice that permits plaintiffs to "amend up" to a class complaint.
170 W.Va. at 531, 295 S.E.2d at 21-22.
[8] In the Syllabus of Burks v. Wymer, 172 W.Va. 478, 307 S.E.2d 647 (1983), we established the following guidelines for circuit courts to follow in evaluating whether a class action could be certified under the 1960 version of Rule 23:

The following factors should be considered by a trial judge in deciding whether a "spurious" class action may be maintained under W.Va. R.Civ.P. 23(a)(3):
(1) whether common questions of law or fact predominate over any questions affecting only individual members;
(2) whether other means of adjudicating the claims and defenses are practicable or inefficient;
(3) whether a class action offers the most appropriate means of adjudicating the claims and defenses;
(4) whether members not representative parties have a substantial interest in individually controlling the prosecution or defense of separate actions;
(5) whether the class action involves a claim that is or has been the subject of a class action, a government action, or other proceeding;
(6) whether it is desirable to bring the class action in another forum;
(7) whether management of the class action poses unusual difficulties;
(8) whether any conflict of laws issues involved pose unusual difficulties; and
(9) whether the claims of individual class members are insufficient in the amounts or interests involved, in view of the complexities of the issues and the expenses of the litigation, to afford significant relief to the members of the class.
The version of Rule 23 that was discussed by the Court in Burks v. Wymer was based upon the 1938 version of Rule 23 of the Federal Rules of Civil Procedure; the federal rule was last amended in 1998. The West Virginia version of Rule 23 was amended by this Court in 1998, bringing it more into alignment with the federal rule.
While the factors outlined in Burks v. Wymer remain helpful to courts evaluating the propriety of motions for class certification, we no longer believe they are sufficient under our current version of Rule 23.
[9] A prior version of Rule 23 contained the following requirements:

The appropriateness of a class action under Rule 23(a) of the West Virginia Rules of Civil Procedure depends on a determination that the persons constituting the class are so numerous as to make it impracticable to bring them all before the court, that the named individuals joined will fairly insure the adequate representation of the class, and that the rights asserted against or on behalf of those making up the class are of the character specified in the rule.
Syllabus Point 5, Jefferson County Bd. of Educ. v. Jefferson County Educ. Assoc., 183 W.Va. 15, 393 S.E.2d 653 (1990). The rule has since been amended, and Rule 23 now contains additional requirements.
[10] It is unclear whether lawsuits have been filed on behalf of these individuals, or whether the plaintiffs' attorneys actually represent these individuals or simply know that these individuals wish to assert claims against the defendants.

The circuit court denied certification, in part, because it determined that the "statute of limitation would vary from person to person." We note that this is an overbroad statement of the law. Courts usually hold that the timely "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713, 727 (1974). See also, Vaccariello v. Smith & Nephew Richards, Inc., 94 Ohio St.3d 380, 763 N.E.2d 160 (2002) (class action filed in federal court; when class action status was later denied by federal court, state court held that statute of limitation had been tolled during pendency of class action, and allowed case to proceed in state court); Syllabus Point 2, Waltrip v. Sidwell Corp., 234 Kan. 1059, 678 P.2d 128 (1984) ("The right of all putative members of a proposed class in an action filed pursuant to K.S.A. 60-223 to file a separate action is saved or preserved pending the determination of whether the initial case shall be maintained as a class action."); Crown, Cork & Seal Company, Inc. v. Parker, 462 U.S. 345, 354, 103 S.Ct. 2392, 2397, 76 L.Ed.2d 628, 636 (1983) ("Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."); Nolan v. Sea Airmotive, Inc., 627 P.2d 1035, 1042 (Alaska, 1981) ("the filing of a class action under Civil Rule 23 ordinarily tolls the statute of limitations as to all members of the class, whether or not named in the complaint.").
[11] W.Va.Code, 46A-6-106(1) [1974] states:

Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article, may bring an action in the circuit court of the county in which the seller or lessor resides or has his principal place of business or is doing business, or as provided for in sections one and two, article one, chapter fifty-six of this Code, to recover actual damages or two hundred dollars, whichever is greater. The court may, in its discretion, provide such equitable relief as it deems necessary or proper.